**THE TEAM WORKING FOR YOU et al., Appellants,**

**v.**

**OHIO ELECTIONS COMMISSION, Appellee.**

[Cite as *The Team Working for You v. Ohio Elections Comm.* (2001), 142 Ohio App.3d 114.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–748.

Decided March 29, 2001.

116

*Donald J. McTigue,* for appellants.

*Betty D. Montgomery,* Attorney General, *Sharon Jennings* and *Elise Porter,* Assistant Attorneys General, for appellee.

BOWMAN, Judge.

In November 1997, Peggy Spraggins filed a complaint with appellee, Ohio Elections Commission ("commission"), alleging that appellants, The Team Working for You, Nick Molnar, James Predovic, Anna Hejduk, Clarence E. Johnson, and The News Leader newspaper, were responsible for publishing an advertisement on October 22, 1997, which contained false statements.[1] Spraggins, Molnar, Predovic, Hejduk, and Johnson were all candidates for Macedonia City Council. Molnar, Predovic, Hejduk, and Johnson formed a committee known as The Team Working for You to promote their candidacy. The complaint also named Rosalie

---

1. A copy of the advertisement is set forth in the Appendix.

Koren as treasurer of The Team Working for You, but did not name her in her individual capacity.

On November 25, 1997, the commission dismissed the complaint as to The News Leader. The commission held a hearing on September 24, 1998, and October 1, 1998. Based upon clear and convincing evidence, the commission found that the following statements published in the advertisement were false and violated R.C. 3517.21(B)(10):

"1. She [Spraggins] is currently campaigning against industrial growth and overdevelopment in Macedonia.

"* * *

"• In 1987, she [Spraggins] worked with an out-of-town developer to rezone several acres of wooded property on Highland Road from residential to industrial. Spraggins actively advised and campaigned for the developer despite the protest of residents who lived in the area and did not want industrial development.

"* * *

"3. In 1994, Spraggins stopped a referendum petition that would have given the residents a vote on Environmental Services' proposed increase in our sewer rates. Prosecutor Lynn Slaby's letter addressed to Ms. Spraggins dated 4–7–94 indicated that he was responding to her * * * 'request.' Because the referendum was stopped, our sewer rates were increased without voters' input."

The commission voted to refer the matter to the county prosecutor.[2] Appellants filed a notice of appeal from the commission to the Franklin County Court of Common Pleas, which affirmed the commission's findings. Appellants filed a notice of appeal to this court and raise the following assignments of error:

"1. The record does not demonstrate by clear and convincing evidence that any or each of the appellants made the challenged statements or knew that the statements were not true or entertained serious doubts as to their truthfulness.

"2. The record does not demonstrate by clear and convincing evidence that the challenged statements were false.

"3. The complaint did not allege a violation by Rosalie Koren and the Commission's adjudication does not apply to her."

The commission and the trial court found the statements at issue to be a violation of R.C. 3517.21(B)(10), which provides as follows:

---

2. The record on appeal was supplemented with a letter from the Summit County Prosecuting Attorney in which he stated that no criminal charges would be filed, since a different standard of proof was required for prosecution of a criminal action.

"(B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:

"* * *

"(10) Post, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate."

R.C. 3517.157(D) provides that a party adversely affected by a final determination of the commission may appeal pursuant to R.C. 119.12. R.C. 119.12 provides the standard of review for the common pleas court in that the court may affirm the order if it is supported by reliable, substantial, and probative evidence, and is in accordance with law. Generally, an appellate court determines whether the trial court abused its discretion in review of the agency order. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266–268. On questions of law, however, the court of appeals' review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus.

In this case, the commission found a violation of R.C. 3517.21(B)(10), which requires proof by clear and convincing evidence. See R.C. 3517.155(D)(1). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

In cases involving the First Amendment, "an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502, 515, quoting *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 284–286, 84 S.Ct. 710, 728–729, 11 L.Ed.2d 686, 708–710. In *New York Times* at 279–280, 84 S.Ct. at 725–726, 11 L.Ed.2d at 706–707, the United States Supreme Court held that a person who is a public figure cannot recover damages for a defamatory falsehood relating to his official conduct unless he proves by clear and convincing evidence that the

statement was made with "actual malice," which has been defined as knowledge that the statement was false or that the statement was made with reckless disregard of whether it was false or not. Independent review is required when the actual malice standard is applicable. *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 114, 567 N.E.2d 253, 255–256. The question of whether the evidence in the record supports a finding of actual malice is a question of law. *McKimm v. Ohio Elections Comm.* (2000), 89 Ohio St.3d 139, 147, 729 N.E.2d 364, 373, citing *Harte–Hanks Communications, Inc. v. Connaughton* (1989), 491 U.S. 657, 685, 109 S.Ct. 2678, 2694–2695, 105 L.Ed.2d 562, 587.

In this case, Spraggins, a city council candidate, was a public figure, and, therefore, we must conduct an independent review of the entire record and determine whether the statements were false and made with actual malice, that is, either the statements were made with knowledge that they were false or with reckless disregard as to the falsity.

Appellants initially argue that the complaint did not meet the statutory requirements for specificity and was defective. R.C. 3517.21(C) provides that a complaint shall be filed with the commission pursuant to R.C. 3517.153. R.C. 3517.153(A) provides that a complaint may be filed by anyone by affidavit upon personal knowledge, and R.C. 3517.153(B) provides that the commission shall prescribe the form for complaints. Ohio Adm.Code 3517–1–02(A) provides:

"A complaint shall be submitted to the commission in one of two forms[3]:

"(1) By affidavit by an individual based on personal knowledge in the following format:

"* * *

"(b) Clearly set forth the names, full residence and/or business addresses of all parties and affiants, including the name, title and address of the officer, member or agent making the complaint and person responsible for the behavior about which the complaint is made * * *:

"* * *

"(d) Clearly set forth the specific source or basis of the personal knowledge and be signed and sworn before a notary public * * *;

"(e) Contain by attachment all affidavits, exhibits and other documents relied upon in alleging the violation or tending to support the allegations;

---

**3.** The second form of the complaint set forth in Ohio Adm.Code 3517–1–02 pertains to complaints filed by the Secretary of State or an official of a county board of election and is not applicable to the facts of this case.

"(f) Clearly set forth sufficient facts, supported by affidavits, exhibits and/or other documents to constitute a prima facie violation of Ohio election law over which the commission has jurisdiction;

"(g) Clearly set forth each and every separate alleged violation of Ohio election law over which the commission has jurisdiction in a narrative form, cross-referenced to the relevant Revised Code section(s)." (Footnote added.)

In this case, Spraggins filed an affidavit that provided her name, address, and, in paragraph five, listed the names and addresses of the other parties. The affidavit asserted that R.C. 3517.21(B)(10) was violated by appellants by publishing the advertisement on October 22, 1997. The affidavit then provided, in narrative form, the facts supporting Spraggins's contention that the statements were false. Attached were supporting exhibits and the affidavit was signed and sworn before a notary. The complaint met the statutory and administrative requirements, and the argument is without merit.

By the first and second assignments of error, appellants contend that the record does not demonstrate by clear and convincing evidence that any or each of the appellants made the challenged statements or knew that the statements were not true or even that the statements were false. As stated above, actual malice has been defined as knowledge that the statement was false or that the statement was made with reckless disregard of whether it was false or not. In *McKimm, supra*, the Supreme Court of Ohio addressed the evidence required to establish actual malice in a case before the commission. The court, 89 Ohio St.3d at 148, 729 N.E.2d at 373–374, quoted *St. Amant v. Thompson* (1968), 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, as follows, finding that " '[t]here must be sufficient evidence to permit the conclusion that *the defendant in fact entertained serious doubts* as to the truth of his publication.' " (Emphasis *sic*.) *St. Amant* requires evidence of the defendant's subjective state of mind in order to find actual malice. But the court, in *McKimm*, recognized the limitation on the ability of the defendants to "subvert the standard with self-serving testimony." *McKimm*, at 148, 729 N.E.2d at 374. The factfinder must determine that the publication was made in good faith.

The first statement that the commission found to be a violation of R.C. 3517.21 was that Spraggins "is currently campaigning against industrial growth and overdevelopment in Macedonia." Spraggins testified that, in 1997, she did not develop a platform for her campaign and focused more on her credentials. She disseminated only a card and a letter as campaign materials, neither of which discuss industrial growth in Macedonia. During her mayoral campaign in 1995, she made comments about industrial growth and development. In 1995, she was against tax abatements, but her position in both 1995 and 1997 was to seek planned growth not to campaign against growth. Spraggins admitted at the

hearing that, in 1995, she did make comments about industrial growth and development in Macedonia. She also admitted that, in 1995, she did adopt statements that she wanted to preserve the quiet quality of life of Macedonia and she stated that she was "committed to helping our community keep its small town atmosphere while moving forward into the next century." Thus, at the time of the 1997 campaign, which is the subject of this case, Spraggins was not opposed to growth but did not favor growth supported by taxpayers through tax abatements.

Koren testified that the members of the team met at several meetings and exchanged personal experiences, researched newspaper articles, campaign materials and minutes of city council meetings and other official documents to develop the advertisement. Hejduk testified essentially the same. Molnar and Johnson testified that they were present at some of the meetings but did not review the advertisement before it was published. Predovic did not testify. Koren testified that her definition of "campaign" was "assist," and when asked her definition of "currently campaigning," she testified: "My definition of currently campaigning was in the past." All of the appellants who testified stated that they believed that the information that was published was true.

Appellants contend that the statement is grounded in fact because Spraggins was against overdevelopment and tax abatements, and increased traffic or threats to the small town atmosphere of Macedonia. Appellants further contend that, since the statement is not absolutely false, no liability may be found.

However, the advertisement read that Spraggins "is currently campaigning against industrial growth" and, in 1997, she was not campaigning as such. "Currently" means occurring or existing in the present time, not two years prior. Also, a statement against tax abatements does not equate to being against industrial growth. Thus, while appellants may have testified that they believed that the statements to be true, they displayed a reckless disregard for the truth by using inaccurate words in the advertisement. Molnar and Johnson also displayed reckless disregard in failing to review the advertisement before it was published.

The second statement that the commission found violated R.C. 3517.21(B)(10) was as follows:

"In 1987, she worked with an out-of-town developer to rezone several acres of wooded property on Highland Road from residential to industrial. Spraggins actively advised and campaigned for the developer despite the protest of residents who lived in the area and did not want industrial development."

Spraggins testified that, in 1987, she was working as the clerk of council for the city of Macedonia, as legislative administrative assistant to the mayor and council

and as secretary to the civil service commission. As clerk of council she was required to attend council meetings; she was responsible for all legislation, agenda items, and minute preparation. She testified that the developer in question requested information on the rezoning process and she informed him of the process. She explained the codified ordinances and explained the procedure, including the planning, the public hearing, and legislative procedure. She testified that part of her job duties included giving requested information.

Koren testified that, in 1987, she was a member of city council. The public meeting on the rezoning had been set for July 2, 1987. Koren testified that, a few days before the public hearing, she asked Spraggins to review the ordinance and petition for procedural compliance because she believed that the developer had not complied with the ordinance. The next day she observed the developer in Spraggins's office and Spraggins was advising him how to proceed. The public hearing was then continued at the developer's request. Koren testified that she questioned Spraggins about the developer's presence, and Spraggins responded that the developer had contacted Spraggins at home the evening before and "what she did at home after working hours was her own business." Koren believed that Spraggins had not followed proper procedure and the first public meeting was set at an advantageous time in order for the developer to get his land rezoned.

Spraggins testified that she sometimes worked from her home because she had small children. The developer requested a continuance of the public hearing and the mayor, not Spraggins, decided to reschedule the hearing. She testified that she did not campaign for the rezoning.

The mayor of Macedonia, in 1987, was Stuart Feils, whose affidavit was submitted. His testimony indicated that he had referred the developer to Spraggins to obtain the necessary documents, laws, and guidelines for a zoning change. He also stated that he advised Spraggins to take the appropriate steps to arrange for the continuance. He also testified that one of the regular duties of Spraggins's employment was to provide information to persons concerning city functions and procedures, and providing such information to the developer was a function within the scope of her employment. He stated that at no time did Spraggins perform duties beyond the scope of her employment.

There was testimony from both Spraggins and Feils that part of her job duties included advising developers concerning laws and procedures, and that she did so as part of her job. There was no evidence presented that Spraggins "actively campaigned" for the developer. Thus, appellants acted with reckless disregard when publishing this statement.

■ The third statement that the commission found violated R.C. 3517.21 was as follows:

"In 1994, Spraggins stopped a referendum petition that would have given the residents a vote on Environmental Services' proposed increase in our sewer rates. Prosecutor Lynn Slaby's letter addressed to Ms. Spraggins dated 4–7–94 indicated that he was responding to her * * * 'request.' Because the referendum was stopped, our sewer rates were increased without voters' input."

In 1994, Spraggins was working as the clerk for Summit County Council and, as such, she was the administrative head of the legislative body of county government. She was responsible for the agenda items, preparing legislation for council consideration, and distributing it after it was approved by council.

Koren testified that she was a part of the petition drive to put the issue of a referendum on an increase in sewer rates on the ballot. After a certified copy of the petition was filed, Spraggins, as county council clerk, requested an opinion from the county prosecutor as to the procedure for a referendum. Spraggins testified that she discussed the issue with the president and other members of city council and they suggested seeking assistance from the prosecutor. The prosecutor issued an opinion that indicated that the issue was not subject to a referendum. After the opinion was issued, the petition drive did not gather a sufficient number of signatures. The affidavit of the county prosecutor was submitted in which he testified that Spraggins regularly requested legal advice in connection with the duties of her office and she did refer this matter regarding the referendum procedure to him. The affidavit of a county council member, John Bolek, was also submitted, and, in it, he testified that Spraggins conferred with him regarding the referendum and that he recommended that she seek help from the prosecutor regarding answers to her questions.

The language in the advertisement at issue is that "Spraggins stopped a referendum petition." Her request for a legal opinion did not stop the referendum petition, but, rather, the petition drive was stopped by the prosecutor's opinion that it was not subject to a referendum. Appellants argued that Spraggins had no duty to act until the petition with signatures was filed. However, requesting legal advice regarding procedure was not outside the scope of her duties as clerk and the act of requesting the opinion did not "stop" the referendum.

Appellants argue that the commission was required to find that each appellant made the statement and knew that it was false because there is no vicarious liability under the First Amendment.

The evidence demonstrates that the statements are false. The advertisement listed each appellant as a member of The Team Working for You. By publishing

the advertisement with their names attached, each appellant adopted the statements as their own. In *DeWine v. Ohio Elections Comm.* (1978), 61 Ohio App.2d 25, 15 O.O.3d 28, 399 N.E.2d 99, the Ohio Elections Commission found a violation of R.C. 3599.091 (predecessor of R.C. 3517.21) by the candidate and his campaign committee.

In *State v. Davis* (1985), 27 Ohio App.3d 65, 27 OBR 84, 499 N.E.2d 1255, the Ohio Elections Commission, under similar circumstances, found that a candidate for Geauga County Commissioner and members of his reelection committee had violated R.C. 3599.091 and transmitted its findings to the prosecuting attorney. In a case related to *Davis, State v. Manfredi* (May 17, 1985), Geauga App. No. 1166, unreported, 1985 WL 9986, Carl Manfredi was convicted of eight counts of violating R.C. 3599.091(B)(10), in connection with his work on the committee to elect a candidate. The appellate court affirmed the convictions even though there was no evidence that demonstrated Manfredi knew that the statements were false. There was evidence that he acted in reckless disregard of their truth because, as in this case, Manfredi had twelve years of experience working as a township trustee and was knowledgeable about the basic tenets of township government and how it functions. Based on his previous experience and personal involvement in local politics, the court found that Manfredi was not justified on his reliance on the information provided by the other defendants. As in *Manfredi*, each of the appellants here had experience in local government and all but Koren were city council candidates. Appellants acted with reckless disregard by publishing the advertisement that contained false statements.

Appellants argue that this case is similar to *In re Pirko* (1988), 44 Ohio App.3d 3, 540 N.E.2d 329. In *Pirko*, James Pirko caused a pamphlet to be printed and circulated that stated that a fellow trustee of Weatherfield Township, George Buccella, who was seeking re-election, had rejected a proposal to establish a fire inspection bureau. Buccella filed a complaint with the commission. The commission found that Pirko had violated former R.C. 3599.091(B)(10). The common pleas court affirmed the commission's decision. This court, on appeal, found that there was some truth in the statement because Buccella had rejected the proposal because of a lack of funds. This court found the statement misleading and that it failed to disclose all relevant facts, but that it was not a "false statement" under R.C. 3599.091(B). Appellants cite *Pirko* because this court defined a "false statement" as a statement which "sets forth matters which are not true. Statements without grounds in truth or fact are false statements." *Pirko* at 5, 540 N.E.2d at 332. However, *Pirko* is distinguishable from this case because the three statements at issue here are not merely incomplete but contain false statements or statements that are not true.

■ Appellants also allege that these statements constitute statements of opinion and are entitled to protection under the Ohio Constitution, which provides a separate and independent guarantee of protection for opinion ancillary to freedom of the press. *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 281, 649 N.E.2d 182, 184–185. In the syllabus of *Vail,* the Supreme Court of Ohio applied the following test to determine whether speech is protected opinion:

"[A] court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared. * * *"

■ In this case, the advertisement provides: "Residents, Remember these *facts* when you vote on November 4." (Emphasis added.) The statements concern specific actions by Spraggins, including specific references to events and local issues that are verifiable. The statements do not involve subjective states of mind. Thus, applying the *Vail* test, the statements are factual in nature.

Appellants also argue that the statements are subject to different interpretations and, thus, are not false, but, rather, they are ambiguous; however, the statements are clear and false, and, therefore, this argument has no merit.

Thus, the evidence is clear and convincing that the statements were false and that appellants acted with reckless disregard in publishing them. Appellants' first and second assignments of error are not well taken.

By the third assignment of error, appellants contend that the complaint did not allege a violation by Koren and that the commission's adjudication does not apply to her. The complaint named Koren only as the treasurer for The Team Working For You and did not name her as an individual defendant. See Spraggins's affidavit, paragraph five. At the probable cause hearing, Koren appeared and represented The Team Working For You. The commission's adjudication letter is addressed to "The Team Working for You Rosalie Koren, Treasurer."

Koren objected to the magistrate's decision on the same basis. The trial court did not address that objection but did agree with the magistrate and affirmed the commission's decision. We find that the commission did not make a finding of liability against Koren in her individual capacity. Both the complaint and the commission's adjudication letter are addressed to The Team Working For You with Koren only as the treasurer. Appellants' third assignment of error is well taken.

For the foregoing reasons, appellants' first and second assignments of error are overruled and the third assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part,

and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PEGGY BRYANT, P.J., and DESHLER, J., concur.

APPENDIX

Pd Pd Adv.

## RESIDENTS, REMEMBER THESE FACTS WHEN YOU VOTE ON NOVEMBER 4:

Peggy Spraggins has a checkered political history in Macedonia. Over the years, she has developed a habit of telling voters one thing, then doing another.

1. She is currently campaigning against industrial growth and overdevelopment in Macedonia.

• However, when she ran for council in 1985, she actively supported rezoning of the corner of Rt. 82 and S. Bedford Road for apartment buildings. Fortunately, she lost and the apartments were not built.

• In 1987, she worked with an out-of-town developer to rezone several acres of wooded property on Highland Road from residential to industrial. Spraggins actively advised and campaigned for the developer despite the protests of residents who lived in the area and did not want industrial development.

• Recently, she has been paid to promote industry in another suburb. This action is in complete contradiction to her alleged concerns for our city.

• Her campaign platform concerning "proper planning" is no longer relevant. An individual claiming to have been "active" in the city should be aware comprehensive plans for growth were started back in 1980 when Jim Lutz was mayor. The development occurring now has been in accordance with plans put in place 10 to 15 years ago.

2. She put the passage of the fire levy in jeopardy by misleading the voters about the City's finances. (NEWS LEADER 4-23-97.) The City's Finance Directory immediately issued a rebuttal with accurate figures. The failure of the issue would have meant no third shift in the Fire Department. Again she lost, and the residents won when informed voters passed the issue.

3. In 1994, Spraggins stopped a referendum petition that would have given the residents a vote on Environmental Service proposed increase in our sewer rates. Prosecutor Lynn Slaby's letter addressed to Ms. Spraggins dated 4-7-94 indicated that he was responding to her... "request." Because the referendum was stopped, our sewer rates were increased without voters' input.

4. Currently, Spraggins was involved with bringing suit against the City to stop the golf course. She claimed the City was rushing the issue past the voters; yet, for the past 11 years she has been aware that a golf course has been planned. Never once, until now, was there a request to put the issue on the ballot. She lost again when the courts ruled in favor of the City. However, the suit cost the taxpayers $10,000 to defend the case. Now, Spraggins and others, unhappy with the court's ruling have appealed the court's decision which will cost the City additional legal fees.

5. This action against the golf course will have a big impact on future development of our parks and on the Field of Dreams Committee to provide additional recreation. All of the revenue from the golf course was earmarked for the Parks Department. The golf course developer would have had to install sewer lines to the Park at no cost to the City. The $125,000 saved would have gone to the Field of Dreams Committee. Because of this legal action and delay in Twinsburg, the developer may withdraw.

Elect

"THE TEAM WORKING FOR YOU"

ANNA HEJDUK ☑

CLARENCE JOHNSON ☑

NICK MOLNAR ☑

JIM PREDOVIC ☑

POSITIVE, PROGRESSIVE CANDIDATES WORKING *for the* PEOPLE

PAID FOR BY THE TEAM WORKING FOR YOU

ROSALIE KOREN, TREASURER, 9460 WOODVIEW, MACEDONIA, OHIO 44056