FLANNERY, Appellee,

v.

OHIO ELECTIONS COMMISSION, Appellant.

[Cite as *Flannery v. Ohio Elections Comm.*, 156 Ohio App.3d 134, 2004-Ohio-582.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–672.

Decided Feb. 10, 2004.

Donald J. McTigue, for appellee.

Jim Petro, Attorney General, and Sharon A. Jennings, Assistant Attorney General, for appellant.

BROWN, Judge.

{¶ 1} Ohio Elections Commission ("commission"), appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which it reversed the decision of the commission and found that Bryan Flannery, appellee, did not violate R.C. 3517.21(B).

{¶ 2} Kenneth Blackwell was the republican incumbent Ohio Secretary of State in 2002. Flannery was his democratic opponent for the November 2002 election. Sometime prior to November 2001, Blackwell's office distributed anti-voter fraud posters to county boards of elections to be posted at polling locations in connection with the 2001 general and 2002 primary elections. The top of the poster had the words "vote fraud" within a circle and a slash through them. Under the circle and slash were the words: "One Person. One Vote. It's the Law." Under these phrases, the poster indicated: "If you voted an absentee or a provisional ballot, you cannot vote at the polls on election day. Whoever violates this law is guilty of a fourth degree felony. Ohio Revised Code Section 3599.12." "Ohio Secretary of State" was written in block print at the bottom of the poster, beside which was the reproduced signature of Blackwell. To the right of the signature was a "logo" consisting of a globe with "Change Our World" in small capital letters and "Vote" in larger capital letters in the foreground. The larger word "Vote" lined up horizontally with "Ohio Secretary of State" and Blackwell's signature.

{¶ 3} On April 15, 2002, Flannery mailed a letter ("April letter") to all Ohio county boards of elections. The letter included the following:

"* * * It has come to light that Boards of Election around Ohio have received posters from Ohio Secretary of State J. Kenneth Blackwell requesting to be placed in polling locations on Election Day.

"Please be advised that the practice in which you have been asked to engage in by displaying this campaign item is in violation of Ohio Revised Code 3501.30 and 3501.35. Ohio Revised Code 3501.30 states that no one other than election officials, witnesses, challengers, police officers and voters waiting to cast their ballot are to engage in loitering, congregating or a campaign activity within 100 feet of the walkways of a polling area. * * *

"Ohio Revised Code 3599.24(B) states that violating this law is a criminal offense. * * *"

{¶ 4} R.C. 3501.30 provides that police and election officials shall ensure that there is no loitering, congregating, or election campaigning within 100 feet of the polling places. R.C. 3501.35 provides that no person may loiter or congregate, hinder or delay an elector, or solicit or attempt to influence any elector in casting his vote within 100 feet of the polling places. R.C. 3599.24(A)(5) provides that no person shall loiter in or about a registration or polling place during registration or the casting and counting of ballots so as to hinder, delay, or interfere with the conduct of the registration or election. R.C. 3599.24(B) indicates that anyone who violates R.C. 3599.24(A)(5) is guilty of a minor misdemeanor. On April 15, 2002, Flannery was interviewed on Ohio public radio ("radio interview"). During that interview, Flannery made the following statement with regard to the posters:

"* * * In this case our Secretary of State is abusing his, ah, abusing his power and his position to influence persons [sic] vote and its' [sic] akin to someone going to vote and the poll worker giving them the ballot saying vote for Ken Blackwell. That is wrong, it is unethical, it is illegal.

"* * *

"We're notifying the boards of elections of this criminal activity and are asking them to cease and desist and we're sending those certified mail. And, um, then the next step would be to pursue this with the county prosecutors around the state of Ohio if they don't abide by the law."

{¶ 5} On April 16, 2002, the Bucyrus Telegraph–Forum printed an article ("Bucyrus article") on Flannery's objection:

"Bryan Flannery on Monday called his opponent's poster campaign against voter fraud unethical, arrogant and criminal.

"* * *

" 'This has clearly crossed the line,' Flannery said. 'This is akin to an election official handing a person a ballot and saying, "Vote for Blackwell." ' "

{¶ 6} On April 20, 2002, the Toledo Blade printed an article ("Toledo article"), in which Flannery was quoted as saying:

" 'This is a criminal penalty, advertising your name at the public expense,' he said in an interview in Toledo yesterday.

"* * *

" '* * * They are covering up the criminal action they participated in,' Mr. Flannery charged."

{¶ 7} On June 19, 2002, David Kennedy, campaign manager for Blackwell, filed a complaint with the commission alleging that, by making these statements as well as others, Flannery violated R.C. 3517.21(B)(4) and (10), which provides:

"(B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:

"* * *

"(4) Make a false statement that a candidate or public official has been indicted or convicted of a theft offense, extortion, or other crime involving financial corruption or moral turpitude;

"* * *

"(10) Post, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate."

{¶ 8} On June 27, 2002, the commission held a probable cause hearing and found that probable cause existed to determine that R.C. 3517.21(B) had been violated. On September 5, 2002, the commission held an evidentiary hearing on the merits. The commission concluded that Flannery had violated R.C. 3517.21(B) by making the four statements quoted above. The commission found no violation as to other statements at issue in the complaint and did not issue a public reprimand. The commission concluded that good cause had been shown not to refer the matter for prosecution.

{¶ 9} Flannery appealed the commission's decision to the Franklin County Court of Common Pleas. On May 13, 2003, the court issued a decision finding that the record did not contain clear and convincing evidence that Flannery's statements were made with knowledge of or reckless disregard as to falsity. The trial court entered a judgment reversing the decision of the commission on June

2, 2003. The commission appeals from the court's judgment, asserting the following assignment of error:

"The court of common pleas erred by determining [that] the record did not contain clear and continuing [sic] evidence that Mr. Flannery acted with at least reckless disregard for the truth."

{¶ 10} The commission argues in its assignment of error that the trial court erred when it found that the record did not contain clear and convincing evidence that Flannery's statements were made with knowledge of or reckless disregard as to falsity. R.C. 3517.157(D) provides that a party adversely affected by a final determination of the commission may appeal pursuant to R.C. 119.12. R.C. 119.12 provides the standard of review for the common pleas court in that the court may affirm the order if it is supported by reliable, substantial, and probative evidence, and is in accordance with law. Generally, an appellate court determines whether the trial court abused its discretion in review of the agency order. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264. However, on questions of law, the review of the court of appeals is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus.

{¶ 11} In the present case, the commission found a violation of R.C. 3517.21(B)(4) and (10), which requires proof by clear and convincing evidence. See R.C. 3517.155(D)(1). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

 {¶ 12} In cases involving First Amendment rights, as in the present case, "an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502, quoting *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 284–286, 84 S.Ct. 710, 11 L.Ed.2d 686; see, also, *The Team Working for You v. Ohio Elections Comm.* (2001), 142 Ohio App.3d 114, 119, 754 N.E.2d 273, citing *Bose,* supra. The "actual-malice" standard applied in First Amendment cases is specifically incorporated into the standard contained in R.C. 3517.21(B)(10). Whether the evidence in the record supports a finding of actual malice is a question of law. *McKimm v. Ohio Elections Comm.* (2000), 89 Ohio St.3d 139,

147, 729 N.E.2d 364, citing *Harte–Hanks Communications, Inc. v. Connaughton* (1989), 491 U.S. 657, 685, 109 S.Ct. 2678, 105 L.Ed.2d 562; see, also, *The Team Working for You,* 142 Ohio App.3d at 120, 754 N.E.2d 273, citing *McKimm.* Thus, independent review is required when the actual-malice standard is applicable. *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 114, 567 N.E.2d 253.

{¶ 13} In discussing the actual-malice standard, the United States Supreme Court held in *New York Times* that a person cannot recover damages for a falsehood unless he proves by clear and convincing evidence that the statement was made with actual malice, which it defined as knowledge that the statement was false or that the statement was made with reckless disregard of whether it was false or not. *New York Times,* supra, 376 U.S. at 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686. Reckless disregard may be established by clear and convincing evidence that the false statements were made with a high degree of awareness of probable falsity, or that the defendant in fact entertained serious doubts as to the truth of his publication. *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 80, 518 N.E.2d 1177. Further, the United States Supreme Court has emphasized that reckless conduct is not measured by whether a reasonably prudent person would have published. Id. at 80, 518 N.E.2d 1177, quoting *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262. There must be sufficient evidence to permit the conclusion that the person in fact entertained serious doubts as to the truth of the publication. Id. Actual malice is to be measured as of the time of publication. *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 124, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 14} In addition, the United States Supreme Court has emphasized that, by permitting liability only for false statements made with actual malice, the law encourages robust criticism of public officials and issues. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789. Public officials will often be subject to "vehement, caustic, and sometimes unpleasantly sharp attacks." *New York Times,* supra, 376 U.S. at 270, 84 S.Ct. 710, 11 L.Ed.2d 686. By prohibiting the imposition of strict liability for false statements made against public figures, the actual-malice standard provides essential "breathing space" for the criticism that is inevitable in free debate and crucial to our democratic system. *Philadelphia Newspapers, Inc. v. Hepps* (1986), 475 U.S. 767, 772, 106 S.Ct. 1558, 89 L.Ed.2d 783, quoting *New York Times,* supra, 376 U.S. at 272, 84 S.Ct. 710, 11 L.Ed.2d 686. While the actual-malice benchmark presents a high bar to recovery, it is not an insurmountable bar, as "[f]alse speech, even political speech, does not merit constitutional protection if the speaker knows of the falsehood or recklessly disregards the truth." *McKimm,* supra, 89 Ohio St.3d at 147, 729 N.E.2d 364. In other words, there is no constitutional value in false

statements of fact. *Herbert v. Lando* (1979), 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115.

{¶ 15} According to the Ohio Supreme Court, judicial scrutiny should focus on the publisher's attitude toward the truth or falsity of the publication. *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 520 N.E.2d 198. Although this "standard requires a clear and convincing showing," it can be satisfied by circumstantial evidence of the defendant's state of mind. *McKimm*, 89 Ohio St.3d at 147–148, 729 N.E.2d 364. However, while the law requires an examination of the publisher's state of mind, it limits the ability of a publisher to avoid liability with self-serving testimony. In *St. Amant*, 390 U.S. at 732, 88 S.Ct. 1323, 20 L.Ed.2d 262, the United States Supreme Court explained:

"The defendant * * * cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. * * *"

{¶ 16} In *Herbert*, 441 U.S. at 170, 99 S.Ct. 1635, 60 L.Ed.2d 115, the United States Supreme Court recognized that an individual will "rarely be successful in proving awareness of falsehood from the mouth of the defendant himself." It would be a rare case in which an individual accused of publishing a false or defamatory statement admitted that he or she did so with malice or recklessness. *Citizens to Save Northland v. Ohio Elections Comm.* (Dec. 27, 2001), Franklin App. No. 01AP–115, 2001 WL 1654481.

{¶ 17} In the present case, the trial court found that Flannery's statements were false but that the record did not contain clear and convincing evidence that the statements were made with actual malice. After independently reviewing the record, we find that, even assuming arguendo that Flannery's statements were false, the commission failed to sustain its burden that the statements were made with actual malice. There is no evidence that Flannery knew the statements to be false; therefore, the commission had to demonstrate that Flannery made the statements with reckless disregard as to their truth or falsity. On this point, the commission presented no evidence that Flannery entertained serious doubts about the truth of his statements. The evidence produced demonstrates that Flannery's statements were based upon his reading of Ohio law and his comparison of Blackwell's actions to the elements of the offenses. Flannery testified at the hearing before the commission that he had consulted the Ohio Revised Code to determine whether the posting of posters violated R.C. 3501.30, 3501.35, and 3599.24. He insisted that it was his belief at the time of publication that Blackwell's posters violated the above-quoted statutes because they constituted campaigning activities that attempted to influence electors.

{¶ 18} Although Flannery's testimony does not automatically necessitate finding a lack of reckless disregard because of its possible self-serving taint, this court may, nevertheless, consider his subjective belief in determining whether the publication was indeed made in good faith. See *St. Amant*, supra, 390 U.S. at 732, 88 S.Ct. 1323, 20 L.Ed.2d 262; *Bukky v. Printing Co.* (1981), 68 Ohio St.2d 45, 22 O.O.3d 183, 428 N.E.2d 405. This is particularly true in the present case, in which the commission has wholly failed to present any evidence demonstrating Flannery's state of mind, either through direct or circumstantial evidence. The commission presented no evidence tending to show that Flannery deliberately avoided any knowledge, was provided contrary authority from Blackwell or any other source, was warned by an unbiased party of a lack of basis, was aware of potentially vindicating information, or was motivated solely by vindictiveness. The only evidence presented as to Flannery's state of mind demonstrates that Flannery was sincerely convinced that Blackwell's posters were in violation of Ohio law. A person speaking with moral certainty about a subject, no matter how misguided, cannot be said to be acting with actual malice. *Lansdowne v. Beacon Journal Publishing Co.* (1987), 32 Ohio St.3d 176, 180, 512 N.E.2d 979. Given his good-faith conviction as to the violations, Flannery may have subjectively concluded that the posters were attempts to hinder and interfere with the election process, a criminal offense under R.C. 3599.24. Consequently, Flannery may have had a good-faith belief that the poster-related actions were "unethical," "wrong," "criminal," "arrogant," and "crossed the line." In sum, there is simply a lack of evidence to demonstrate that Flannery possessed any serious doubt as to the truth or falsity of his statements.

{¶ 19} Professions of good faith will unlikely be persuasive if the statements were totally fabricated, a product of the speaker's imagination, or based wholly on unverified or anonymous sources or information. See *St. Amant*, supra, 390 U.S. at 732, 88 S.Ct. 1323, 20 L.Ed.2d 262. In the current case, the commission did not demonstrate that any of these circumstances existed. The present case is not a situation in which Flannery made a bald accusation based upon an undisclosed law or unidentified theory. To the contrary, Flannery specifically disclosed the code sections he believed Blackwell to be in violation of and the allegedly offending actions, thereby allowing the receivers of the information to substantiate or contradict his claims.

{¶ 20} Further, despite the commission's claim to the contrary, this is not a situation in which the allegations were manufactured from "thin air." Flannery's allegations were based upon factual events and had an arguably rational basis, even if ultimately incorrect. This rational basis is apparent from Carol Taylor's and Dana Walch's testimony at the commission hearing. Taylor, Director of Public Affairs for the Ohio Secretary of State, testified that Blackwell's office

edited Blackwell's name from the posters to be sent to polling places for the 2002 general election because Blackwell was a candidate and "it would not be appropriate for his name to be there." Walch, the Director of Elections for the Ohio Secretary of State, also testified that a decision was made in early 2002 that Blackwell's name would be deleted from the voter-fraud posters for the 2002 general election because Blackwell would be a candidate. He said it was removed to end any controversy by an opponent surrounding the issue. Walch agreed that it was a matter of opinion whether the posters constituted a message to voters to vote for Blackwell or if the posters violated any law prohibiting campaigning or attempting to influence a person's vote at a polling place. The testimony of Walch and Taylor directly contradicts the commission's claim that Flannery's statements came out of "thin air" and provides some evidence of a rational legal and factual foundation for his opinion. See *Mosley v. Evans* (1993), 90 Ohio App.3d 633, 638, 630 N.E.2d 75 (no reckless disregard where speakers had a factual foundation for their opinions). Taylor's and Walch's comments demonstrate that Flannery's statements were not "so inherently improbable that only a reckless man would have put them in circulation." *St. Amant,* supra, 390 U.S. at 732, 88 S.Ct. 1323, 20 L.Ed.2d 262. Therefore, the commission failed to show why Flannery's good-faith belief in the truth of his accusations should be doubted.

{¶ 21} The commission also seeks to establish reckless disregard by virtue of Flannery's failure to adequately or completely investigate the illegality of the poster, pointing out that Flannery is not a lawyer and should have first sought the opinion of an attorney skilled in election law. However, the "[f]ailure to investigate does not in itself establish bad faith," as mere negligence is insufficient to prove actual malice. *St. Amant,* supra, 390 U.S. at 733, 88 S.Ct. 1323, 20 L.Ed.2d 262, citing *New York Times,* supra, 376 U.S. at 287–288, 84 S.Ct. 710, 11 L.Ed.2d 686; *Dale,* supra, 57 Ohio St.3d at 118, 567 N.E.2d 253. Likewise, the failure to investigate "thoroughly" before publication does not give rise to reckless disregard when there are no obvious reasons to doubt the truth of the publication. *Bacon v. Kirk* (Oct. 31, 2000), Allen App. No. 1–99–33, 2000 WL 1648925, citing *Varanese,* supra, 35 Ohio St.3d at 82, 518 N.E.2d 1177. Even if a reasonable prudent person would have consulted an attorney or conducted further research of investigation, such does not in itself constitute or prove actual malice. *Rountree v. WBNS TV, Inc.* (Nov. 23, 1999), Franklin App. No. 98AP–1649, 1999 WL 1054882, citing *Harte–Hanks Communications,* supra, 491 U.S. at 688, 109 S.Ct. 2678, 105 L.Ed.2d 562. Instead, the alleged failure to investigate must be evaluated in light of the total information the defendant had at the time of publication. See *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 92, 31 OBR 250, 509 N.E.2d 399. In the present case, as explained above, there is no evidence that Flannery entertained serious doubts as to the truth of his publica-

tion. Therefore, Flannery's failure to consult an attorney or conduct more thorough research does not establish reckless disregard. After an independent review of the record, we find that the commission failed to establish by clear and convincing evidence that Flannery made the statements with actual malice.

{¶ 22} Flannery also contended that his statements were protected opinions under the Ohio Constitution, and the trial court agreed. However, we need not determine whether this statement is an opinion in the constitutional sense. See *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182; *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 249–250, 25 OBR 302, 496 N.E.2d 699; Restatement of the Law 2d, Torts (1977) 170–175, Section 566. Whether the statements are additionally protected by the Ohio Constitution becomes irrelevant in light of our determination that no actual malice has been shown. See *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 651 N.E.2d 1283, fn. 7. Regardless of the quality of Flannery's statements as fact or opinion, it was nevertheless communicated without serious doubts as to its accuracy or an awareness of a high probability of its falsity. Therefore, the commission's assignment of error is overruled.

{¶ 23} Accordingly, the commission's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

PEGGY BRYANT and WRIGHT, JJ., concur.

J. CRAIG WRIGHT, J., retired, of the Supreme Court of Ohio, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.