[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 772 
{¶ 1} Appellant, Service Employees International Union District 1199 ("SEIU"), appeals from a judgment of the Franklin County Court of Common Pleas affirming a final determination of appellee, Ohio Elections Commission ("OEC" or "commission"), that found that SEIU had violated R.C. 3517.22(B)(2) by publishing a false statement in a campaign opposing passage of a proposed tax levy in Cuyahoga County. Because the record lacks evidence of the necessary malice to support the commission's determination, we reverse.
{¶ 2} In early 2003, the Cuyahoga County Commissioners placed on the May 6, 2003 ballot a proposal to replace an existing health and human services tax levy of 3.1 mills, which had an effective rate of 2.75 mills, with a replacement tax levy *Page 773 
of 4.9 mills. The tax levies applied to all taxable real property in Cuyahoga County. SEIU mailed brochures to voters in Cuyahoga County and aired a television advertisement opposing the proposed tax levy, designated as "Issue 15" on the ballot.
{¶ 3} The brochures included the following statements:
 Issue 15 will cost homeowners a heck of a lot — an extra 60% in property taxes every year.
 On May 6th, VOTE NO on Issue 15. TOO HIGH A PRICE.
Too little accountability.
In addition, the brochures contained two drawings of a price tag. One was shown as attached to a drawing of a house and read: "Over 60% increase in our Property TAXES."
{¶ 4} The television advertisement contained similar statements, including one with an announcer stating, "They want to raise taxes 60 percent." The television advertisement also depicted a price tag with the quoted language, and it displayed a graphic that rotated on and off the screen with the statement "60% Tax Increase." Neither the campaign brochures nor the advertisement explained that Issue 15 involved a health and human services tax levy or that the 60 percent increase applied only to the health and human services tax levy, not to all property taxes.
{¶ 5} On April 22, 2003, a citizen's complaint was filed with the OEC alleging that SEIU had violated Ohio's election laws because the statements contained in the brochures and television advertisement regarding a 60 percent increase in property taxes were false. The complaint specifically alleged that the statements violated R.C. 3517.22(B)(2), which prohibits a person in an issue-advocacy campaign from distributing or publishing campaign material that contains a false statement, "either knowing the same to be false or acting with reckless disregard of whether it was false or not."
{¶ 6} After a three-member panel of the commission found probable cause to proceed with the complaint, an evidentiary hearing was held before the full commission on May 5, 2003, one day before the election. At the hearing, evidence was presented that (1) passage of Issue 15 would raise the health and human services tax rate from an effective rate of 2.75 mills to an effective rate of 4.9 mills, (2) for a $100,000 home, an increase from 2.75 mills to 4.9 mills would result in the health and human services taxes levied on the home increasing from $84.32 under the then existing tax levy to $150.06 under the proposed replacement tax levy, a net increase of $65.74, and (3) a $65.74 increase in the health and human services tax levy constitutes more than a 60 percent increase in that specific tax levy, but the proposed increase in the health and human services tax *Page 774 
levy would result in a maximum increase of 5.06 percent in a resident's total property taxes.
{¶ 7} Although the foregoing evidence was not in dispute, the parties' interpretations of the evidence led to markedly different answers to the central question: What does "[o]ver 60% increase in our property taxes" mean as published in the brochures and television advertisement SEIU disseminated concerning Issue 15? Arguing that the phrase "our property taxes" clearly means all property taxes a resident is responsible for paying on his or her real property, the complainant asserted that the statement "60% increase in our property taxes" is false because a resident's total annual property taxes would increase a maximum of 5.06 percent, not 60 percent, if Issue 15 were approved by the voters.
{¶ 8} SEIU, in turn, argued that the entire context of the brochures and television advertisement relates to ballot Issue 15 and the property taxes paid for health and human services. SEIU contended that because no one disputed that the property taxes levied for health and human services would increase at least 60 percent if Issue 15 were approved, the statements in the campaign literature and advertisement were not false.
{¶ 9} At the conclusion of the hearing, the commission found, by a vote of four to three, that SEIU's inclusion of the phrase "[o]ver 60% increase in our property taxes" in its brochures and television advertisement violated R.C. 3517.22(B)(2) by clear and convincing evidence. Pursuant to R.C. 3517.155(A)(1)(a), the commission found that good cause existed to issue a reprimand letter but not to refer the matter to a prosecutor.
{¶ 10} On June 9, 2003, SEIU appealed the commission's final determination to the Franklin County Court of Common Pleas pursuant to R.C. 3517.157(D) and 119.12. On January 23, 2004, the common pleas court entered judgment affirming the commission's findings that SEIU violated R.C. 3517.22(B)(2) and that a reprimand should be issued.
{¶ 11} Employing an independent review of the record, the common pleas court first found by clear and convincing evidence that the statement at issue was false. Specifically, the court determined that to a "reasonable recipient," the statement meant that passage of Issue 15 would result in a 60 percent increase in a Cuyahoga County resident's entire property tax bill, and not a 60 percent increase solely in the health and human services tax levy that constitutes only a small portion of the total property taxes a county resident pays. Next, determining that "the statement in question was a crafted statement designed to convey the false and incorrect message that the approval of the levy would result in increasing an individual's property tax by 60%," the court found clear and convincing evidence that SEIU had published the statement in the campaign *Page 775 
material with actual malice, knowing it was false or with reckless disregard for its truth or falsity.
{¶ 12} SEIU appeals, assigning the following errors:
 1. The trial court erred in finding that the statement at issue was not truthful.
 2. The trial court erred in finding that the statement at issue was made knowingly or with reckless disregard of its truth or falsity.
 3. The trial court erred in holding that the Commission was not required to dismiss the case at the conclusion of the complainant's presentation of its evidence.
{¶ 13} As a preliminary matter, the notice contained in OEC's May 27, 2003 final determination fails to comply with R.C.119.09, which requires that the commission "shall serve by certified mail, return receipt requested, upon the party affected thereby, a certified copy of the order and a statement of thetime and method by which an appeal may be perfected." (Emphasis added.) Specifically, the letter advising the parties of the commission's final determination does not contain a statement that SEIU's appeal was required to be perfected no later than 15 days from the date of mailing of the final determination. See R.C. 119.12; Robinson v. Richter, Franklin App. No. 03AP-979,2004-Ohio-2716, 2004 WL 1172881. Despite defective notice having been served upon the parties in this case, SEIU essentially waived the defective notice and properly invoked the common pleas court's jurisdiction by timely filing its appeal within 15 days from the date the OEC decision was mailed. R.C. 119.12; see Zierv. Bur. of Unemp. Comp. (1949), 151 Ohio St. 123, 38 O.O. 573,84 N.E.2d 746. Accordingly, the common pleas court acquired jurisdiction to decide the merits of SEIU's appeal, and the court's judgment is properly before this court for review.
{¶ 14} SEIU's first two assignments of error are interrelated and will be addressed jointly. Together they assert that the common pleas court erred in affirming the commission's determination that clear and convincing evidence demonstrates that SEIU violated R.C. 3517.22(B)(2) by including the phrase "[o]ver 60% increase in our property taxes" in its campaign material and television advertisement.
{¶ 15} The common pleas court may affirm the order of the commission if it finds upon consideration of the entire record that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12;Flannery v. Ohio Elections Comm., 156 Ohio App.3d 134,2004-Ohio-582, 804 N.E.2d 1032, at ¶ 10. Generally, an appellate court determines whether the common pleas court abused its discretion in reviewing an administrative agency's order, but the appellate court's review is plenary on questions of law. Id.;Team *Page 776 Working for You v. Ohio Elections Comm. (2001),142 Ohio App.3d 114, 119, 754 N.E.2d 273, citing Lorain City Bd. of Edn. v.State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261,533 N.E.2d 264; and Univ. Hosp., Univ. of Cincinnati College ofMedicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339,587 N.E.2d 835, paragraph one of the syllabus. Further, in cases involving the First Amendment, "an appellate court has an obligation to `make an independent examination of the whole record' in order to make sure that `the judgment does not constitute a forbidden intrusion on the field of free expression.'" Bose Corp. v. Consumers Union of United States,Inc. (1984), 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502, quoting New York Times v. Sullivan (1964), 376 U.S. 254,284-286, 84 S.Ct. 710, 11 L.Ed.2d 686; see, also, Flannery,156 Ohio App.3d 134, 804 N.E.2d 1032, at ¶ 12; Team Working forYou, supra.
{¶ 16} Political speech, including statements made in issue-based campaign literature and advertisements, is subject to First Amendment protection unless clear and convincing evidence shows that the statements are false and were made with actual malice, defined as "knowing the same to be false or with reckless disregard of whether it was false or not." R.C. 3517.22(B)(2); R.C. 3517.155(D)(1); McKimm v. Ohio Elections Comm. (2000),89 Ohio St.3d 139, 729 N.E.2d 364; Common Cause/Ohio v. OhioElections Comm., 150 Ohio App.3d 31, 2002-Ohio-5965,779 N.E.2d 766. "[F]alse speech, even political speech, does not merit constitutional protection if the speaker knows of the falsehood or recklessly disregards the truth." McKimm,89 Ohio St.3d at 147, 729 N.E.2d 364, citing Pestrak v. Ohio Elections Comm.
(C.A.6, 1991), 926 F.2d 573, 577. SEIU contends that the record does not demonstrate by clear and convincing evidence that the statement at issue is false or was made with actual malice.
{¶ 17} "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." TeamWorking for You, 142 Ohio App.3d at 119, 754 N.E.2d 273, quotingCross v. Ledford (1954), 161 Ohio St. 469, 53 O.O. 361,120 N.E.2d 118, paragraph three of the syllabus.
{¶ 18} This court has defined a false statement as a statement that "sets forth matters which are not true," or "[s]tatements without grounds in truth or fact." In re Pirko (1988),44 Ohio App.3d 3, 5, 540 N.E.2d 329. A statement is not a "false statement" if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it. Id. Moreover, a statement that is subject to different interpretations is not "false." Briggs v. Ohio Elections Comm.
(C.A.6, 1995), 61 F.3d 487. See, also, McKimm,89 Ohio St.3d at 146, *Page 777 729 N.E.2d 364 (statements that are reasonably susceptible of an innocent construction are protected under the innocent-construction rule).
{¶ 19} The statement at issue here is ambiguous and susceptible of different interpretations. The commission interprets the statement as referring to a 60 percent increase in total property taxes. Because the undisputed evidence reveals that a resident's total property taxes would increase by no more than 5.06 percent if the voters approved Issue 15, a statement having the meaning the commission ascribes would be false. SEIU, on the other hand, interprets the statement at issue as referring to the amount of increase in the specific property taxes relating to Issue 15 that were the focus of the campaign literature and advertisement. Because the undisputed evidence shows that the health and human services tax levy would increase by over 60 percent if the voters approved Issue 15, SEIU's interpretation of the statement would be true.
{¶ 20} In determining the meaning of the statement at issue, the common pleas court applied an objective standard, which uses the perspective of a "reasonable reader" of the statement, and the court determined that the commission correctly interpreted the statement to be false. See McKimm,89 Ohio St.3d at 143-144, 729 N.E.2d 364. In essence, the common pleas court found that a reasonable Cuyahoga County resident, at whom the campaign literature and advertisement were directed, would interpret the statement at issue as meaning all property taxes would increase by at least 60 percent, not merely the health and human services tax levied against a resident's real property, if Issue 15 were approved in the May 6, 2003 election. Given the campaign materials' failure to clarify that the health and human services tax levy, not all property taxes, would increase by 60 percent upon Issue 15's passage, such an understanding arguably would be reasonable. Moreover, because the total amount for all property taxes on a Cuyahoga County resident's real property would increase no more than 5.06 percent upon the passage of Issue 15, a statement meaning that all property taxes would increase by 60 percent if Issue 15 passed would be false.
{¶ 21} Assuming, without so deciding, that the statement at issue is false when viewed from the perspective of a reasonable recipient of the statement, we turn to the remaining question: whether clear and convincing evidence exists that SEIU made the statement with actual malice, either knowing that it was false or acting in reckless disregard of whether it was true or false.McKimm, 89 Ohio St.3d at 146-147, 729 N.E.2d 364; Pestrak,926 F.2d at 577; New York Times. Whether the evidence in the record supports a finding of actual malice is a question of law.McKimm, 89 Ohio St.3d at 147, 729 N.E.2d 364, citingHarte-Hanks Communications, Inc. v. Connaughton (1989),491 U.S. 657, 685, 109 S.Ct. 2678, 105 L.Ed.2d 562. See, also,Flannery, *Page 778 156 Ohio App.3d at 140, 804 N.E.2d 1032; Team Working for You, supra,142 Ohio App.3d 114, 754 N.E.2d 273.
{¶ 22} Proof of falsity differs significantly from proof of actual malice. Bose, 466 U.S. at 511, 104 S.Ct. 1949,80 L.Ed.2d 502. In contrast with "falsity," which is judged under an objective standard using the perspective of a "reasonable reader" of a statement, "actual malice" requires proof of the defendant's subjective state of mind. McKimm, 89 Ohio St.3d at 148,729 N.E.2d 364, citing St. Amant v. Thompson (1968), 390 U.S. 727,733, 88 S.Ct. 1323, 20 L.Ed.2d 262. "While this `standard requires a clear and convincing showing,' it can be satisfied by circumstantial evidence of the defendant's state of mind."Citizens to Save Northland v. Ohio Elections Comm. (Dec. 27, 2001), Franklin App. No. 01AP-115, 2001 WL 1654481, citingMcKimm, 89 Ohio St.3d at 147, 729 N.E.2d 364. "[T]here must be sufficient evidence to permit the conclusion that the defendantin fact entertained serious doubts as to the truth of his publication." (Emphasis sic.) McKimm, 89 Ohio St.3d at 148,729 N.E.2d 364, quoting St. Amant, 390 U.S. at 731, 88 S.Ct. 1323,20 L.Ed.2d 262. The defendant's ability to avoid liability with self-serving testimony is nevertheless limited. McKimm,89 Ohio St.3d at 148, 729 N.E.2d 364, citing St. Amant,390 U.S. at 732, 88 S.Ct. 1323, 20 L.Ed.2d 262. A defendant cannot "`automatically insure a favorable verdict by testifying that he published with a belief that the statements were true.'" Id., quoting St. Amant at 732, 88 S.Ct. 1323, 20 L.E.2d 262. The fact finder must determine that the defendant's publication of a false statement was made in good faith. Id.
{¶ 23} A defendant lacks good faith to make a statement shown to be false where there is either no basis in fact for the statement or no information upon which the defendant could have justifiably relied in making the statement. See St. Amant,390 U.S. at 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call"); McKimm, 89 Ohio St.3d 139, 729 N.E.2d 364, at syllabus (finding good faith lacking where the defendant, a candidate for public office, distributed a campaign brochure implying to reasonable readers that the candidate's opponent committed an illegal act while in office, although the defendant knew that the implication had no basis in fact); Citizens toSave Northland, supra (finding malice where the defendants offered no convincing reason or explanation about why they reasonably believed that verifiably false factual statements in political advertisements were true).
{¶ 24} In contrast, where a statement is supported by some basis in fact, courts have found insufficient evidence of actual malice even if the statement is ultimately found to be untrue. See St. Amant, 390 U.S. at 733, 88 S.Ct. 1323, *Page 779 20 L.Ed.2d 262 (finding actual malice lacking where the defendant published a source's false statements about a public officer but the defendant had no personal knowledge that the statements were false, had verified other aspects of the source's information, and had affidavits from other sources substantiating the statements); Flannery, 156 Ohio App.3d at 142-143,804 N.E.2d 1032 (finding no malice where ultimately incorrect statements were published but the defendant had a factual foundation and an arguably rational basis for making the statements); Mosley v.Evans (1993), 90 Ohio App.3d 633, 638, 630 N.E.2d 75 (finding no malice where some factual foundation existed for statements). Thus, the Supreme Court in Bose found clear and convincing evidence of actual malice lacking where the author's statement "was `one of a number of possible rational interpretations' of an event that `bristled with ambiguities.'" Bose, 466 U.S. at 512,104 S.Ct. 1949, 80 L.Ed.2d 502, quoting Time, Inc. v. Pape
(1971), 401 U.S. 279, 290, 91 S.Ct. 633, 28 L.Ed.2d 45.
{¶ 25} Here, John Burant, a research analyst with SEIU, testified that he and others at SEIU thought about the phrase "60% increase in property taxes" solely in terms of Issue 15. Burant testified that they had no intent to be misleading in using the phraseology and held no discussions and encountered no problems at SEIU with the phrasing. Burant stated that he considered the 60 percent figure to be accurate because it was calculated as the percentage increase in the taxes levied for health and human services if Issue 15 were approved. Burant testified that he believed the 60 percent figure to be completely appropriate given that the entire context of the campaign literature and advertisement concerned Issue 15 and therefore related to an increase in taxes paid for health and human services. In Burant's opinion, the statement at issue was not false. No evidence to the contrary was entered in the record.
{¶ 26} Because actual malice is judged by looking at the defendant's subjective state of mind, McKimm,89 Ohio St.3d at 143-144, 148, 729 N.E.2d 364, this record lacks clear and convincing evidence that SEIU knew that the statement at issue was false or acted in reckless disregard of its truth or falsity when the statement was disseminated. To the contrary, the evidence reflects that SEIU did not entertain serious doubt as to the truth or accuracy of the statement. Moreover, even if we discount Burant's testimony as being self-serving, SEIU's interpretation of the statement is rational and has a basis in fact to support it: the property taxes for health and human services would increase by over 60 percent if the voters approved Issue 15. Accordingly, because a factual foundation and an arguably rational basis supported SEIU's interpretation of the statement, SEIU is deemed to have disseminated the statement at issue in good faith, not with malice. Based upon the foregoing, we sustain SEIU's first and second assignments of error. *Page 780 
{¶ 27} In its third assignment of error, SEIU asserts that the commission should have granted SEIU's motion to dismiss the complaint at the conclusion of the complainant's case because the complainant failed in its burden of proof to introduce sufficient evidence that the allegedly false statement was made with malice. SEIU contends that the common pleas court thus erred in failing to reverse the commission's denial of SEIU's motion to dismiss. Because we have sustained SEIU's first and second assignments of error, finding insufficient evidence that SEIU disseminated the statement at issue with malice, this issue need not be resolved, and we decline to address it.
{¶ 28} Having sustained SEIU's first and second assignments of error, rendering moot their third assignment of error, we reverse the common pleas court's judgment affirming the commission's determination that SEIU violated R.C. 3517.22(B)(2), and we remand with instructions to reverse the commission's determination.
Judgment reversed and cause remanded with instructions.
BOWMAN and DESHLER, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.