OPINION
{¶ 1} This matter comes before us on appeals filed by appellants, the Committee to Elect Straus Prosecutor ("the Straus Committee" or "the Committee"), and by appellee/cross-appellant, the Ohio Elections Commission ("OEC") from a judgment rendered by the Franklin County Court of Common Pleas affirming in part and reversing *Page 2 
in part, the decision rendered by OEC on an election complaint lodged against the Committee. For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} At issue are statements made as part of the 2004 election for the office of Jefferson County Prosecuting Attorney, in which Thomas Straus ran against the incumbent, Bryan Felmet. The Straus Committee paid for advertisements that appeared in the Steubenville HeraldStar newspaper in December of 2003 and May of 2004. The advertisements included statements regarding a number of criminal cases that had been prosecuted by Felmet's office.
 {¶ 3} Felmet filed a complaint with the OEC, alleging that the advertisements contained a number of false statements in violation of R.C. 3517.21. Ultimately, OEC found by clear and convincing evidence that the Committee made four false statements about three separate criminal cases. Those statements, all of which were contained in the May 2004 advertisement, were:
 1. After Robinson sat in jail for 7 months awaiting trial, the prosecutor recommended a plea bargain to release him with 7 months credit for time served.
 2. But the case against the ringleader later plea bargained to 7 months time served. No prison time.
 3. Defendant agreed to Plead Guilty, but prosecutor fails to file charge and voluntarily dismisses case (on May 13, 2004) as "speedy trial" deadline expires.
 4. Defendant convicted of shooting wife in the back of the head — defendant confessed.
 {¶ 4} The Committee filed an appeal with the Franklin County Court of Common Pleas. The trial court affirmed OEC's decision that the Committee had made false statements with regard to the Robinson case. The court reversed OEC's decision *Page 3 
regarding the McGowan case, finding that, although the statement made was false, OEC's finding that the statement was made either with knowledge that it was not true, or with reckless disregard for its truth or falsity, was not supported by clear and convincing evidence. The court also reversed OEC's decision regarding the Trouten case, holding that the statement was ambiguous rather than false, and that it therefore could not have been made with knowledge of its falsity or with reckless disregard for its truth or falsity.
 {¶ 5} The Straus Committee appealed, alleging as its single assignment of error:
 The lower court erred when it affirmed the Ohio Elections Commission finding that Appellant violated R.C. § 3517.21 (B)(3) and (B)(10) by stating that "After Robinson sat in jail for 7 months awaiting trial, the prosecutor recommended a plea bargain to release him with 7 months credit for time served."
 {¶ 6} OEC filed a cross-appeal, alleging three assignments of error:
 1. The trial court erred in determining that there was insufficient evidence that Straus published false statements regarding the McGowan case with reckless disregard for the truth when he knowingly relied only upon hearsay from a confidential informant to make the determination that a criminal defendant had agreed to plead guilty without making any further attempt to verify the accuracy of the statements.
 2. The trial court erred in determining that Straus's statements regarding the Trouten case were ambiguous rather than false when a reasonable reader would interpret the statement that a criminal defendant "confessed" to mean that the criminal defendant had confessed to the crime with which he was charged (murder) and not merely that he admitted that he accidentally pulled the trigger.
 3. The trial court erred in determining that there was insufficient evidence that Straus acted with reckless disregard for the truth when he published false statements regarding the Trouten case when the evidence indicates that he knew the underlying facts surrounding the case, but nevertheless chose to misstate them. *Page 4 
 {¶ 7} OEC found that the statements made regarding the Robinson,McGowan, and Trouten cases violated R.C. 3517.21(B)(3) and (10), which provide:
 (B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:
 * * *
 (3) Make a false statement concerning the professional, occupational, or vocational licenses held by a candidate, or concerning any position the candidate held for which the candidate received a salary or wages;
 * * *
 (10) Post, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate.
 {¶ 8} Generally, review of agency orders, including orders issued by OEC, is governed by R.C. 119.12, which provides that a trial court may affirm the agency order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. Appellate review of such cases is normally limited to whether the trial court abused its discretion in its review of the agency's order. Lorain City Bd. of Edn.v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257.
 {¶ 9} However, in reviewing OEC decisions that involve findings that a campaign committee has made false statements, such as in this case, Ohio courts have applied the First Amendment principles applicable to defamation actions. See McKimm v. Ohio *Page 5 Elections Comm. (2000), 89 Ohio St.3d 139. These cases involve a determination of whether clear and convincing evidence demonstrates false statements were made with actual malice, which has been defined as actual knowledge that the statement was false or with reckless disregard for whether it was false or not. Team Working for You v. Ohio ElectionsComm. (2001), 142 Ohio App.3d 114. Whether a statement was made with actual malice is a question of law. McKimm, supra. Thus, in such cases, an appellate court must "`make an independent examination of the whole record' in order to make sure that `the judgment does not constitute a forbidden intrusion on the field of free expression.'" Flannery v. OhioElections Comm., 156 Ohio App.3d 134, 2004-Ohio-582, at ¶ 12, quotingBose Corp. v. Consumers Union of United States, Inc. (1984),466 U.S. 485, 499, 104 S.Ct. 1949; New York Times Co. v. Sullivan (1964),376 U.S. 254, 84 S.Ct. 710.
 {¶ 10} Throughout its briefing the Straus Committee argues that any statements made in the advertisements were statements of opinion, and that the statements therefore enjoy greater First Amendment protection than if they were statements of fact. Ohio courts have recognized that under the Ohio Constitution there is a "separate and independent guarantee of protection" for statements that constitute opinion.Wampler v. Higgins (2001), 93 Ohio St.3d 111, 119, citing Vail v. PlainDealer Publishing Co. (1995), 72 Ohio St.3d 279. Distinguishing fact from opinion depends upon a consideration of the common meaning of the words used, and how a reasonable reader would perceive those words.McKimm, supra, at 144. Ohio courts have identified four factors that distinguish a statement of fact from a statement of opinion: (1) the specific language used; (2) whether *Page 6 
the statement can be verified; (3) the general context of the statement; and (4) the broader context in which the statement appeared.Vail, supra, at 282.
 {¶ 11} Applying these factors to each of the four statements, it is clear that all of the statements allege factual matters, not opinion. A reasonable reader would perceive the words used as discussions of facts regarding the dispositions of the criminal cases discussed. There are no words used in the advertisements that make any attempt to qualify the statements made as opinions rather than fact. The general context in which the statements were made is an advertisement that includes a number of factual statements regarding actions taken by Felmet as prosecutor. Although the broad message of the advertisement may have been an expression of opinion regarding the quality of the work performed by Felmet as prosecutor, the advertisements use factual statements as evidence to support that general message. Consequently, we reject the Straus Committee's assertion that the statements made constitute protected opinion rather than fact.
 {¶ 12} At the trial court level, the Straus Committee made a number of arguments the trial court declined to address. The Committee repeated a number of these arguments in the briefing here. Although not denominated as assignments of error, we will nevertheless address these arguments, as they at least arguably relate to the single error assigned.
 {¶ 13} First, the Committee argues that it was denied the right to compulsory process due to OEC's failure to enforce a subpoena directed to Judge David Henderson, who was the sentencing judge in theRobinson case. The record shows that Judge Henderson was issued a subpoena at the request of the Straus Committee. Judge *Page 7 
Henderson came to Columbus in response to the subpoena during the portions of the hearing held on September 9 and 10, 2004, but was not called as a witness. Prior to the hearing being reconvened on September 14, 2004, Judge Henderson sent a letter to OEC in which he stated that trial obligations would prevent him from attending. OEC Executive Director Philip Richter acknowledged receipt of the letter, and informed Judge Henderson that any attempts to enforce the subpoena would be made through the Franklin County Court of Common Pleas.
 {¶ 14} During the hearing, counsel for the Committee stated that it had been her intention to call Judge Henderson as a witness, and asked that his affidavit be accepted as evidence instead. Felmet's counsel objected to admission of the affidavit, which was sustained. OEC's hearing officer then asked the Committee's counsel if it was her intention to request that OEC institute an action to enforce the subpoena. Counsel responded by stating "I don't know that we're going to be able to do that today because it's our intention to wrap this up today and it's not our intention to extend this into another day." The Committee subsequently proffered Judge Henderson's affidavit as part of the record.
 {¶ 15} Based on the affidavit proffered in the record, Judge Henderson's testimony would have involved his conclusion that the prosecutor did not offer sufficient evidence in the Robinson case to allow imposition of a sentence greater than the minimum. Consequently, this evidence would have been duplicative of other evidence already in the record, including the transcript of the sentencing hearing in which Judge Henderson made his finding. Therefore, the Committee could not have suffered any prejudice from Judge Henderson's absence. Moreover, the record shows that OEC's hearing officer *Page 8 
asked if the Committee wished to request that OEC institute an action in the Franklin County Court of Common Pleas to enforce the subpoena, and the Committee declined to request such an action. As such, if the failure to enforce the subpoena had constituted error by OEC, the Committee invited the error.
 {¶ 16} The Straus Committee also argues that it was deprived of its due process right to be heard by a competent tribunal. It is fundamental that the right to due process includes the essential rights of notice and hearing or the opportunity to be heard before a competent tribunal.State v. Edwards (1952), 157 Ohio St. 175. In support of this argument, the Committee claims that OEC failed to understand the issue before it, and completely misapplied the hearsay rule in refusing to allow some evidence offered by the Committee.
 {¶ 17} In making this argument, it appears that the Committee is assuming the word "competency" in describing a tribunal that satisfies the requirements of due process means "a basic or minimal ability to do something." See Black's Law Dictionary (8 Ed.Rev.2004) 302. However, "competency" for due process purposes refers to "the capacity of an official body to do something." Id. There is no question that OEC is charged with the authority to hear complaints such as this one, and therefore was competent to hear the case. R.C. 3517.157 provides that OEC shall conduct hearings in accordance with R.C. Chapter 119. R.C.119.09 provides that an agency holding a hearing has the authority to pass on the admissibility of evidence. Thus, notwithstanding the Committee's disagreement with some of the evidentiary rulings made by OEC, it is clear that the Committee was not deprived of the right to be heard by a competent tribunal. *Page 9 
 {¶ 18} Moreover, to the extent that the Committee actually is taking issue with the rulings regarding admissibility of hearsay evidence, it appears from the Committee's brief that the specific instance in which OEC excluded evidence on hearsay grounds involved questioning of Straus's law partner, Frank Joseph Bruzzese, about his sources of information for the statements made about the various cases. The questioning related to the Committee's argument that it had a good-faith basis to believe each of the statements made was true. Our review of the record shows that the Committee was able to evince testimony about the basis for the claims made in the advertisements from Bruzzese as well as other witnesses. Thus, even if OEC did incorrectly exclude some evidence on hearsay grounds, the Committee ultimately suffered no prejudice from any of those rulings.
 {¶ 19} Next, the Committee argues that there was never any evidence that the Committee itself was the publisher of the advertisements. The Committee claims that the evidence offered at the OEC hearing was that Straus paid for the advertisements himself, and that there were no other people involved in the decision to run the advertisements. However, the advertisements themselves state that they were "Paid For By Committee to Elect Straus Prosecutor, Joseph J. Bruzzese, Treasurer." This constituted sufficient evidence in the record to establish that the Straus Committee, and not Straus individually, was responsible for the publication of the advertisements.
 {¶ 20} Finally, the Straus Committee argues that there was never any evidence presented showing that either Straus or Felmet was a formal candidate for the office of Jefferson County Prosecuting Attorney at the time the advertisements ran. The Committee argues that for purposes of R.C. Chapter 3517, a candidate has the same *Page 10 
definition as set forth in R.C. 3505.01(H), which defines a candidate as a person who has been "certified * * * for placement on the official ballot[.]" The Committee claims that there had been no certification of candidacy for either Straus or Felmet when the advertisement that included the first statement regarding the Robinson case initially ran in December 2003. It further contends that no proof was offered that either was a certified candidate when the advertisement that repeated the first statement regarding the Robinson case, and made the remaining statements at issue in this case for the first time, was published in May of 2004.
 {¶ 21} However, R.C. 3517.01(A)(3) provides that the definition of candidate includes not only the definition set forth in R.C. 3501.01(H), but also includes "any person who, at any time before or after an election, receives contributions or makes expenditures or other use of contributions, has given consent for another to receive contributions or make expenditures or other use of contributions, or appoints a campaign treasurer, for the purpose of bringing about the person's nomination or election to public office." Both the December 2003 and May 2004 advertisements state that they were paid for by the Committee to Elect Straus, and identify the Committee's campaign treasurer. As such, there was evidence in the record establishing that Straus was a candidate for the office of Jefferson County Prosecuting Attorney when the advertisements were published.
 {¶ 22} Moreover, R.C. 3517.21(B) prohibits certain actions, including the making of false statements, by a "person, during the course of any campaign for nomination or election to public office." Therefore, there was no requirement that evidence be offered proving that Straus was a candidate when the advertisements were published. The only *Page 11 
requirement was a showing that the Committee made the statements during the course of a campaign for public office, which was satisfied here.
 {¶ 23} In addition, although not specifically addressed at the hearing, we believe there was sufficient evidence in the record showing that Felmet was a candidate for purposes of R.C. 3517.21. Felmet was the incumbent county prosecutor, and was running for reelection to the office. The original complaint was filed with OEC by the Felmet for Prosecutor Committee. The advertisements were addressed at what Straus believed were deficiencies in the manner in which Felmet operated the office, and were relevant to Straus's campaign to unseat him from that office.
The Robinson Case {¶ 24} Joshua Robinson was indicted in case No. 03CR-42 on two charges involving the possession and sale of heroin, one a second-degree felony and one a fourth-degree felony. While that case was still pending, Robinson was indicted in case No. 03CR-167 on two more charges involving the sale of heroin and Oxycontin, one a fourth-degree felony and the other a fifth-degree felony.
 {¶ 25} Although the two cases were not formally consolidated, a plea agreement was reached to resolve both cases together. Robinson agreed to plead guilty to the fourth-degree felony in case No. 03CR-42 and to both charges in case No. 03CR-167 in exchange for dismissal of the second-degree felony in the first case. The Jefferson County Court of Common Pleas held a sentencing hearing in which Robinson was informed that, under the plea agreement, he could be sentenced to a total of 48 months of incarceration if maximum consecutive sentences were imposed on the charges remaining in the two cases. *Page 12 
 {¶ 26} The assistant prosecuting attorney argued that the trial court should impose the maximum sentences on each of the three remaining charges, and that the sentences should be ordered served consecutively. The assistant prosecutor also offered evidence to support the state's argument that the court should find the facts necessary to impose maximum consecutive sentences, as provided by the then existing sentencing provisions of the Revised Code.[1] However, the trial court rejected the prosecutor's argument, finding that the evidence was not sufficient to impose maximum consecutive sentences in the two cases. As a result, Robinson was sentenced to seven months in case No. 03CR-42, for which he was given credit for time served, and to six months in case No. 03CR-167.
 {¶ 27} The May 2004 advertisement paid for by the Straus Committee included two statements regarding the Robinson case. The first was that "[a]fter Robinson sat in jail for 7 months awaiting trial, the prosecutor recommended a plea bargain to release him with 7 months credit for time served."[2] The second statement was that "the case against the ringleader later plea bargained to 7 months time served." OEC found that the statements were false, and were made with actual malice. The trial court affirmed this conclusion.
 {¶ 28} To the average reader, these statements clearly suggest that, as a factual matter, the plea bargain entered in the Robinson case included an agreement by the prosecutor that Robinson would be sentenced to seven months time served. However, the record establishes that seven months was not a sentence recommended by the prosecutor. The assistant prosecuting attorney argued for the maximum sentence, and it *Page 13 
was only because the trial court found the evidence supporting the prosecutor's argument insufficient that a lesser sentence was imposed. The assistant prosecuting attorney's failure to offer evidence sufficient to convince the trial court to impose a greater sentence cannot be characterized as an agreement by the prosecutor to the lesser sentence that was imposed.
 {¶ 29} One of the arguments made by the Straus Committee is that the advertisement refers only to case No. 03CR-42, and not to case No. 03CR-167. The Committee claims that, viewing case No. 03CR-42 by itself as the case was identified in the advertisements, the prosecutor did, in effect, "agree" to the imposition of a lesser sentence because the agreement in that case number resulted in a conviction on only one charge, which would necessarily have limited the trial court's discretion in sentencing. However, the record shows that all parties involved understood that the two cases constituted a single package for sentencing, making it inappropriate to attempt to view case No. 03CR-42 in isolation. More importantly, even if it were appropriate to view the case in isolation, the record shows that the prosecutor consistently argued for imposition of the maximum sentence, and did not agree to the imposition of a seven month sentence.
 {¶ 30} Consequently, the statements regarding the Robinson case were false. The Committee argues that it could not have been found to have made the statements with actual malice because it had a good-faith belief that the statements were true. However, the publisher of false statements cannot automatically avoid liability by offering self-serving testimony that it published the statements with a good-faith belief that they were true. Flannery, supra, citing St. Amant v. Thompson (1968),390 U.S. 727, 88 S.Ct. 1323. *Page 14 
Courts, including this one, have recognized that "it would be a rare case where an individual accused of publishing a false or defamatory statement admitted that he or she did so with malice or recklessness."Citizens to Save Northland v. Ohio Elections Comm. (Dec. 27, 2001), Franklin App. No. 01AP-115. Consequently, actual malice may be established by circumstantial evidence of the publisher's state of mind.McKimm, supra, at 147-148.
 {¶ 31} In this case, testimony at the OEC hearing established that the Straus Committee consisted of Straus and his law partner, Frank Joseph Bruzzese, both of whom were experienced criminal defense attorneys with knowledge of the Ohio criminal sentencing statutes. As such, the Committee was in a position to understand the distinction between a plea agreement that involved an agreement by the prosecuting attorney on the sentence to be imposed and a plea agreement that only involved an agreement on the charges to which the defendant pled guilty, with no agreed sentence. In the absence of any evidence in the record that the agreement included an agreed sentence, the Committee should have investigated further into the circumstances surrounding the plea agreement, which would have shown that the prosecution argued for imposition of the maximum sentence.
 {¶ 32} In addition, the assistant prosecuting attorney who handled theRobinson case testified that he informed Straus prior to the printing of the second advertisement in May of 2004 that the statements regarding the Robinson case were false. The Straus Committee elected to reprint the statements regarding the Robinson case without conducting any further investigation, instead taking the position that the statements were accurate as written. This failure to conduct any further investigation in the face of the *Page 15 
information that the advertisement may have been false lends credence to the conclusion that the Committee acted with knowledge that the statements were false, or with reckless disregard for their truth or falsity.
 {¶ 33} Consequently, we agree with OEC and the trial court that the record shows by clear and convincing evidence that the statements made regarding the Robinson case were false, and were made with knowledge of their falsity or with reckless disregard for their truth or falsity.
The McGowan Case {¶ 34} John McGowan was arrested as part of an investigation into narcotics trafficking. According to police officers involved in the investigation, McGowan told a confidential informant that he would enter a guilty plea with an agreed sentence of 90 days of incarceration, and the informant passed that information along to the officers. During discussions with Detective Hanlin, assistant prosecuting attorney Anthony Battista learned that there were potential problems with the photo identification procedure that had been used when McGowan was arrested. Hanlin also informed Battista that he believed McGowan would plead guilty to a fifth-degree felony charge and serve 90 days of incarceration.
 {¶ 35} Battista prepared a bill of information under which McGowan would plead guilty under the terms identified by Hanlin, and turned the case over to Felmet for further action. Felmet approached McGowan's attorney about the possibility of entering into a plea agreement based on that bill of information, but the offer was rejected. Ultimately, the charges against McGowan were dismissed because he could not be brought to trial within the applicable speedy trial period, and no plea agreement could be reached. *Page 16 
McGowan's attorney, Shawn Blake, testified pursuant to McGowan's waiver of attorney-client privilege that McGowan denied telling anyone he would plead guilty.
 {¶ 36} The statement made in the Straus Committee advertisement regarding the McGowan case was that "Defendant agreed to Plead Guilty, but prosecutor fails to file charge and voluntarily dismisses case * * * as `speedy trial' deadline expires." OEC found that the statement was false, and was made with actual malice. The trial court affirmed the finding that the statement was false, but reversed the finding that the statement was made with actual malice.
 {¶ 37} To a reasonable reader, the statement in the advertisement suggests that there was an agreement between McGowan and the prosecutor whereby McGowan agreed to plead guilty to a particular charge. However, there was never any actual agreement. At most, according to Detective Hanlin, McGowan told a confidential informant that he would be willing to reach an agreement to plead guilty if he would be sentenced to no more than 90 days of incarceration, and the confidential informant told police investigators of this possibility. An indication of the willingness to reach an agreement on specific terms proposed by one party is not the same as actually reaching that agreement. Consequently, we agree with OEC and the trial court that the statement regarding theMcGowan case was false.
 {¶ 38} We also agree with the trial court's analysis in determining the record fails to demonstrate the requisite malice. As the trial court observed, the Straus Committee may have been negligent when it published the statement at issue, but the record does not demonstrate the Committee knew the statement was false or even "entertained serious doubts about the statement at the time" it was published. (Decision and Entry, 14.) The *Page 17 
trial court aptly noted that although the Straus Committee "relied on the double hearsay of a confidential informant," "the assistant prosecutor relied on the same hearsay in preparing a bill of information." Id. Moreover, unlike some other situations, the Committee could not verify the information from public records. Accordingly, we affirm the trial court's decision that the record fails to demonstrate by clear and convincing evidence that the statements were made with knowledge of their falsity or with reckless disregard for their truth or falsity.
The Trouten Case {¶ 39} Shawn Trouten was charged with aggravated murder in the shooting death of his wife. The evidence offered during the trial included a recording of the 911 telephone call in which Trouten reported his wife's shooting, as well as recorded statements Trouten made to police officers. In these recordings, Trouten claimed that the shooting occurred during a struggle in which his wife was attempting to stop him from committing suicide. Throughout the proceedings, Trouten admitted that he had fired the shots that killed his wife, but claimed that the shooting had been an accident. Trouten was ultimately convicted of aggravated murder after a jury trial.
 {¶ 40} The advertisement run by the Straus Committee stated about theTrouten case that, "Defendant convicted of shooting wife in the back of the head — defendant confessed." OEC found that this statement was false, and was made with actual malice. The trial court reversed OEC's decision, finding that the statement was more fairly characterized as ambiguous rather than false, and could not have been made with actual malice. *Page 18 
 {¶ 41} The parties argue that the crux of the issue regarding the statement about the Trouten case is whether Trouten's statements in which he admitted shooting his wife constituted a "confession." Trouten admitted to the act of shooting his wife, but his statements also included the claim that he lacked the intent necessary to have committed the crime of aggravated murder.
 {¶ 42} "Confession" is defined as "a criminal suspect's oral or written admission of guilt, often including details about the crime." Black's Law Dictionary (8 Ed.Rev.2004) 317. "The distinction between admissions in criminal cases and confessions by the accused is the distinction in effect between admissions of fact from which the guilt of the accused may be inferred by the jury and the express admission of guilt itself." Id., citing William P. Richardson, The Law ofEvidence (3 Ed.1928) Section 394, at 268. Trouten's statement that he shot his wife was an admission of a fact from which guilt of the crime of murder could be inferred, but was not an express admission of guilt of the crime itself.
 {¶ 43} However, it is not necessary for us to decide whether the statement regarding the Trouten case was false, because we do not believe the evidence shows actual malice by clear and convincing evidence. See SEIU Dist. 1199 v. Ohio Elections Comm.,158 Ohio App.3d 769, 2004-Ohio-5662. To the extent that the statement was false, it was false only in a strict legal sense based on a close reading of the definition of confession, a distinction unlikely to be made by the average reader. The advertisement identified Trouten's act as shooting his wife in the back of the head, an act Trouten admitted he committed. Although the Committee should have been more careful in its choice of words, such as by use of the word "admitted" instead of "confessed," we cannot *Page 19 
say its choice of wording exhibits knowledge of the statement's falsity or reckless disregard for its truth or falsity.
 {¶ 44} Consequently, we overrule the Straus Committee's single assignment of error as well as OEC's three cross-assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
BRYANT and KLATT, JJ., concur. SADLER, P.J., concurs in part and dissents in part.
[1] Those sentencing provisions have since been declared unconstitutional by the Ohio Supreme Court in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856.
[2] This statement had also been made in the December 2003 advertisement.