OPINION
{¶ 1} The Chairman of the Ohio Democratic Party ("ODP"), as well as the ODP, appeal from a judgment of the Franklin County Court of Common Pleas affirming a decision of the Ohio Elections Commission ("commission") finding that the Chairman of the ODP acted in violation of R.C. 3517.21(B)(1). For the reasons that follow, we affirm.
 {¶ 2} This appeal concerns certain campaign material mailed before the November 2006 election that promoted Democratic candidates seeking statewide offices (hereinafter the campaign material will be referred to as the "flyer"). *Page 2 
 {¶ 3} The record contains a photocopy of the flyer. The Chairman of the ODP is identified on the flyer as its sender, and there is a notation on the flyer indicating that it was paid for by the ODP. The flyer states on one side: "Fed Up With The Mess? Do something about it — Vote Democrat." On the same side are what appear to be partial images of the White House[1] in Washington, D.C., and the Ohio Statehouse, [2] with the words "CORRUPTION," "GAS PRICES," "HEALTH COSTS," "IRAQ," "JOBS OVERSEAS," and "LOST PENSIONS," superimposed over the buildings.
 {¶ 4} The top of the reverse side of the flyer states: "Vote Democratic — Help Turn Around Ohio." It also states: "If you have had enough of Republican incompetence and corruption, send them a message from the comfort of your home. All Ohio voters can now vote by mail from home. It's convenient. It's easy. And it will send a message that will be heard." The flyer explains the "three simple steps" for voting by mail and encourages the recipient to "vote the complete Democratic ticket to bring about the change we need in Ohio." The flyer further states: "Vote By Mail. Vote for Change. Vote the Democratic Ticket." Directly below these last three statements are photographs of the slate of Democratic candidates who were seeking statewide offices. Directly below each candidate's photograph is his or her name, and directly below most of the names are the titles of the offices the candidates were seeking to hold. For example, the photograph of Ted Strickland was placed directly above the following caption:
 Ted Strickland
 Governor *Page 3 
In the same way, the preparer of the flyer set forth the photograph, name, and title of office sought, for candidates Lee Fisher, Marc Dann, Barbara Sykes, Jennifer Brunner, and Richard Cordray. However, instead of indicating that Sherrod Brown was seeking the office of "U.S. Senator," below his name is "U.S. Senate." In addition, instead of indicating that Ben Espy and Bill O'Neill were both seeking the office of "Justice," below each of their names is "Supreme Court." At the time the flyer was distributed, none of the Democratic candidates held the office that was being sought in the election.
 {¶ 5} On October 13, 2006, the Chairman of the Ohio Republican Party filed a complaint with the commission against the Chairman of the ODP, Ted Strickland, Lee Fisher, Sherrod Brown, Marc Dann, Barbara Sykes, Jennifer Brunner, Richard Cordray, Ben Espy, and Bill O'Neill.
 {¶ 6} A probable-cause hearing was held before the commission on October 19, 2006, and all individual candidates included in the original complaint were dismissed, thus leaving only the Chairman, acting on behalf of the ODP. On November 2, 2006, a full hearing was held before the commission. Subsequent to the hearing, the commission issued the following decision:
 THE COMMISSION FOUND A VIOLATION OF R.C. § 3517.21 (B)(1) BASED ON THE OHIO REVISED CODE'S STANDARD OF CLEAR AND CONVINCING EVIDENCE. THE COMMISSION DETERMINED THERE WAS GOOD CAUSE SHOWN NOT TO REFER THE MATTER FOR PROSECUTION OR TO ISSUE A LETTER OF REPRIMAND, BUT TO ALLOW THE FINDING OF A VIOLATION TO STAND AS THE PENALTY. ALL INDIVIDUAL CANDIDATES INCLUDED IN THE ORIGINAL COMPLAINT WERE DISMISSED BY THE PROBABLE CAUSE PANEL. *Page 4 
 {¶ 7} Pursuant to R.C. 119.12, the ODP and its Chairman appealed to the Franklin County Court of Common Pleas.[3] The ODP and its Chairman challenged the constitutionality of R.C. 3517.21(B)(1) and additionally argued that there was no evidence that the Chairman of the ODP knowingly violated the statute. The trial court resolved that R.C. 3517.21(B)(1) is constitutional on its face and was constitutionally applied in this case. The trial court resolved that the ODP and its Chairman had knowledge of the implied claim of incumbency and still distributed the flyer. Therefore, the trial court affirmed the decision of the commission.
 {¶ 8} The ODP and the Chairman of the ODP have appealed to this court from the judgment of the trial court. In this appeal, they set forth the following assignments of error for our review:
 1. The Trial Court erred in holding that [the Chairman of the ODP] knowingly made a false statement.
 2. The Trial Court erred in holding that R.C. § 3517.21(B)(1) is facially constitutional.
 3. The Trial Court erred in holding that the application of R.C. § 3517.21 (B)(1) was constitutional.
 4. The Trial Court erred in holding that the Ohio Democratic Party violated R.C. § 3517.21(B)(1).
 5. The Trial Court erred in holding that the Ohio Elections Commission can find a violation by the Ohio Democratic Party for statements made regarding a federal candidate.
 {¶ 9} Before addressing appellants' assignments of error, we will outline the standard of review for administrative appeals pursuant to R.C. 119.12. Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it *Page 5 
must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of Liquor Control (1955),164 Ohio St. 275, 280. Generally, an appellate court determines whether the trial court abused its discretion in review of the agency order.Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 260-261. However, on questions of law, the review of the court of appeals is plenary. Univ. Hosp., Univ. of Cincinnati College ofMedicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus.
 {¶ 10} In cases involving the First Amendment, as in the case at bar, "an appellate court has an obligation to `make an independent examination of the whole record' in order to make sure that `the judgment does not constitute a forbidden intrusion on the field of free expression.'" Bose Corp. v. Consumers Union of United States, Inc.
(1984), 466 U.S. 485, 499, 104 S.Ct. 1949, quoting New York Times Co. v.Sullivan (1964), 376 U.S. 254, 284-286, 84 S.Ct. 710; see, also, TheTeam Working for You v. Ohio Elections Comm. (2001),142 Ohio App.3d 114, 119, citing Bose Corp.
 {¶ 11} The First Amendment of the United States Constitution states in part: "Congress shall make no law * * * abridging the freedom of speech." The Fourteenth Amendment of the United States Constitution makes the freedom of speech provision of the First Amendment applicable to the states. City of Ladue v. Gilleo (1994), 512 U.S. 43, 45,114 S.Ct. 2038, fn. 1. Analogously, the Ohio Constitution states in part: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being *Page 6 
responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech[.]" Section 11, Article I, Ohio Constitution.
 {¶ 12} Political speech is "`at the core of our First Amendment freedoms.'" Republican Party v. White (2002), 536 U.S. 765, 774,122 S.Ct. 2528, quoting Republican Party of Minn. v. Kelly (C.A.8, 2001),247 F.3d 854, 861. "`Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order `to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" McIntyre v.Ohio Elections Comm. (1995), 514 U.S. 334, 346, 115 S.Ct. 1511, quotingBuckley v. Valeo (1976), 424 U.S. 1, 14-15, 96 S.Ct. 612, 632. Hence, the First Amendment has "`its fullest and most urgent application'" in campaigns for political office. McIntyre, at 347, quotingBuckley, 14-15.
 {¶ 13} However, certain statements in the context of political campaigns are not protected by the First Amendment. "Calculated falsehood falls into that class of utterances which `are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'"Garrison v. Louisiana (1964), 379 U.S. 64, 75, 85 S.Ct. 209. "[T]he use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected." Id. Therefore, "`false speech, even political speech, does not merit constitutional protection if the speaker knows of the falsehood or recklessly disregards the truth.'" McKimm v. Ohio Elections Comm. (2000), *Page 7 89 Ohio St.3d 139, at 147, quoting Pestrak v. Ohio Elections Comm.
(C.A.6, 1991), 926 F.2d 573, 577. See, also, Garrison, at 75 ("Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection.")[4]
False statements can distort the electoral process by potentially misleading and misinforming the electorate. See Marshall, False Campaign Speech and the First Amendment (2004), 153 U.Pa. L.Rev. 285.
 {¶ 14} Appellants' second and third assignments of error challenge the constitutionality of R.C. 3517.21(B)(1), [5] which provides, in part, as follows:
 No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials * * * shall knowingly and with intent to affect the outcome of such campaign do any of the following:
 (1) Use the title of an office not currently held by a candidate in a manner that implies that the candidate does currently hold that office[.]
 {¶ 15} A violation of R.C. 3517.21(B)(1) must be proven by clear and convincing evidence. See R.C. 3517.155(D)(1); McKimm, at 142, fn.1 (applying R.C. 3517.21[B][10]). "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to *Page 8 
be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 16} "All statutes have a strong presumption of constitutionality."Arbino v. Johnson Johnson, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 25. Moreover, it is a "well-settled principle of statutory construction that where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities."State v. Sinito (1975), 43 Ohio St.2d 98, 101, citing State ex rel.Prospect Hosp. v. Ferguson (1938), 133 Ohio St. 325; Wilson v.Kennedy (1949), 151 Ohio St. 485. "Before a court may declare unconstitutional an enactment of the legislative branch, `it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" Groch v. General MotorsCorp., 117 Ohio St.3d 192, 2008-Ohio-546, quoting State ex rel. Dickmanv. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus.
 {¶ 17} Appellants argue that because resolving the issue of whether the use of the title to an office implies that the candidate holds that office is highly subjective, regulating speech on the basis of what is implied is not constitutional. Appellants contend that a person can violate R.C. 3517.21(B)(1) without intentionally implying incumbency by using the title of the office, thus forcing the person to not use the title. Essentially, appellants argue that R.C. 3517.21(B)(1) is unconstitutionally overbroad because it prohibits persons from falsely implying incumbency in campaign materials. See Ashcroft v. Free SpeechCoalition (2002), 535 U.S. 234, 255, 122 S.Ct. 1389, 1404 ("The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process."). *Page 9 
 {¶ 18} In support of their contention that R.C. 3517.21(B)(1) is unconstitutional because it prohibits certain implications, appellants cite Pestrak, supra. In Pestrak, the Sixth Circuit Court of Appeals for the United States determined that R.C. 3599.091(B)(10), which is currently codified as R.C. 3517.21(B)(10), is not unconstitutional on its face. R.C. 3517.21 (B)(10), which is not the section at issue here, prohibits a person from, during the course of a campaign, and by means of campaign materials, knowingly and with intent to affect the outcome of such campaign, "[p]ost, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate."
 {¶ 19} In addition to making the abovementioned determination, thePestrak court opined: "Certain portions of the statute, not at issue here, may pose greater problems. Ohio Rev. Code § 3599.091(B)(1) [currently R.C. 3517.21(B)(1)] proscribes the use of terms and titles in certain ways that `imply' certain things. Thus, a former governor may not use the term `elect Governor Smith' if he is not in fact the incumbent governor[.]" Id. at fn. 2.
 {¶ 20} Appellant's reliance on Pestrak for the proposition that R.C. 3517.21(B)(1) is unconstitutional is unpersuasive, as thePestrak court's statements concerning former R.C. 3599.091(B)(1) were dicta. Also, regarding appellants' contention that what a communication implies is subjective, we note that the Supreme Court of Ohio, inMcKimm, supra, observed that the standard for determining what a statement communicates is based on the reasonable reader standard, not what a particular person *Page 10 
may subjectively perceive. See id. Moreover, for there to be a violation of R.C. 3517.21(B)(1), it must be determined, by clear and convincing evidence, that the person "knowingly and with intent to affect theoutcome of such campaign * * * use the title of an office not currently held by a candidate in a manner that implies that the candidate does currently hold that office." Id. (Emphasis added.) Thus, R.C. 3517.21(B)(1) does not apply to circumstances only involving negligence or even recklessness.
 {¶ 21} For these reasons, we find as unpersuasive appellants' argument that R.C. 3517.21(B)(1) is unconstitutionally overbroad on the basis that it prohibits persons from falsely implying incumbency in campaign materials.
 {¶ 22} Appellants argue that R.C. 3517.21(B)(1) violates due process of law because it is unconstitutionally vague. A law is unconstitutionally vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden[.]"United States v. Harriss (1954), 347 U.S. 612, 617, 74 S.Ct. 808. The "vagueness doctrine," which is based on the idea of fairness, "is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." Colten v. Kentucky (1972), 407 U.S. 104, 110,92 S.Ct. 1953. The Supreme Court of Ohio has stated that "[w]hen a statute is challenged under the due-process doctrine prohibiting vagueness, the court must determine whether the enactment (1) provides sufficient notice of its proscriptions to facilitate compliance by persons of ordinary intelligence and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement." Norwood v.Homey, *Page 11 110 Ohio St.3d 353, 2006-Ohio-3799, ¶ 84, citing Kolender v. Lawson
(1983), 461 U.S. 352, 357, 103 S.Ct. 1855.
 {¶ 23} Appellants contend that the statute does not provide fair notice to a person of ordinary intelligence as to what conduct is prohibited by the statute. While an implication itself may be subject to interpretation, as is the wording of many statutes, the language of R.C. 3517.21(B)(1) is clear. Upon reviewing the statute, we resolve that a person of ordinary intelligence would reasonably understand what conduct is proscribed by R.C. 3517.21(B)(1). Additionally, we further resolve that the statute is sufficiently specific so as to prevent arbitrariness or discrimination in its enforcement. See Norwood, supra, at ¶ 84. The fact that circumstances may arise wherein it is relatively more difficult to determine whether there is a violation of a statute does not render that statute unconstitutionally vague. See Colton, supra. In sum, appellants have failed to demonstrate that R.C. 3517.21(B)(1) is unconstitutionally vague.
 {¶ 24} Appellants contend that R.C. 3517.21(B)(1) is an unconstitutional delegation of legislative power. The General Assembly is precluded from delegating its legislative function; however, it may delegate discretionary functions to administrative bodies so that they can apply the law to various sets of facts or circumstances. Blue Crossof N.E. Ohio v. Ratchford (1980), 64 Ohio St.2d 256, 259. "A statute does not unconstitutionally delegate legislative power if it establishes, through legislative policy and such standards as are practical, an intelligible principle to which the administrative officer or body must conform and further establishes a procedure whereby exercise of the discretion can be reviewed effectively." Id. at syllabus. *Page 12 
 {¶ 25} In enacting R.C. 3517.21(B)(1), the General Assembly set forth in detail the elements that must exist for the commission to find a violation of that statute, and set forth the evidentiary standard that must be established for the commission to find a violation. See R.C. 3517.21(B) and 3517.155(D)(1). Thus, we find as unpersuasive appellants' argument that R.C. 3517.21(B)(1) is an unconstitutional delegation of legislative power to the commission.
 {¶ 26} Appellants argue that the commission has interpreted R.C. 3517.21(B)(1) to require the use of the word "for" between the candidate's name and the office being sought, thereby compelling speech in violation of the United States and Ohio Constitutions. In this regard, appellants contend that the commission placed undue emphasis on the fact that the flyer did not contain the word "for" between the candidates' names and the titles of the offices. Appellants assert that the statute does not require the word "for" to be used between a candidate's name and the title of the office sought. Indeed, R.C. 3517.21(B)(1) does not require the use of the word "for" before the title of the office being sought. Even so, we disagree with appellants to the extent they contend that the commission has created a rule that the word "for" must be used by a non-incumbent.
 {¶ 27} We next address appellants' argument that R.C. 3517.21(B)(1) was unconstitutionally applied in this case. "In an `as applied' challenge, the party challenging the constitutionality of the statute contends that the `application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. The practical effect of holding a statute unconstitutional "as applied" is to prevent its future application in a similar context, but not to render it utterly *Page 13 
inoperative.'" Yajnik v. Akron Dept. of Health, 101 Ohio St.3d 106,2004-Ohio-357, at ¶ 14, quoting Ada v. Guam Soc. of Obstetricians Gynecologists (1992), 506 U.S. 1011, 113 S.Ct. 633 (Scalia, J., dissenting). In support of their argument that R.C. 3517.21(B)(1) was unconstitutionally applied in this case, appellants cite Briggs v. OhioElections Comm. (C.A.6, 1995), 61 F.3d 487. According to appellants, the flyer does not unambiguously imply the incumbency of the candidates.
 {¶ 28} In the Briggs case, the commission found Lou Briggs, a candidate for the office of Ohio State Representative for the 28th District, in violation of R.C. 3599.091(B)(1), which is now R.C. 3517.21(B)(1), in view of her paying for a billboard that stated:
 Lou
 Briggs
 State Representative
 Strong New Leadership
Briggs, at 489.
 {¶ 29} Lou Briggs sued the commission in federal district court, alleging, inter alia, that R.C. 3599.091(B)(1) was unconstitutionally applied to her. See id. The district court dismissed the claim under Fed.R.Civ.P. 12(b)(6). Id. The Briggs court reversed, finding the plaintiff to have stated a claim upon which relief could be granted. Like the trial court, we find that the Briggs case is not controlling here because the Briggs case was resolved on the basis of the appellate court's finding that the district court erred in dismissing the matter under Fed.R.Civ.P. 12(b)(6). Thus, the Briggs holding did not resolve the constitutional claim raised by appellants. *Page 14 
 {¶ 30} In the case at bar, it is uncontested that none of the candidates on the flyer held the office for which he or she was seeking before the November 2006 election. But the parties do dispute whether the preparer of the flyer used the titles of the offices which the candidates were seeking in a manner that implies that the candidates held those offices. The flyer identifies nine Democratic candidates by their picture and name. As to six of the candidates, the public office that each was seeking to hold was identified under the corresponding name and picture. However, regarding Sherrod Brown, "U.S. Senate," was placed under his name, and "Supreme Court" was placed below the names of Ben Espy and Bill O'Neill. Without considering whether the flyer portrays Sherrod Brown, Ben Espy, and Bill O'Neill, as incumbents, we resolve that the flyer would communicate to a reasonable reader that the other six candidates currently held the offices of which they were seeking, considering the positioning of the candidates' photographs, names, and titles of the offices. We recognize that there is language on the flyer that generally advocates "change"; however, that language does not negate the clear implication conveyed by the flyer that these six candidates were incumbents. Therefore, we reject appellants' "as applied" constitutional arguments set forth by their third assignment of error.
 {¶ 31} Accordingly, appellants' second and third assignments of error are overruled.
 {¶ 32} Because they involve interrelated issues, we will address appellants' first and fourth assignments of error together. By their first assignment of error, appellants argue that the record contains no evidence showing that the Chairman of the ODP knowingly made a false statement. Appellants' fourth assignment of error alleges that the *Page 15 
trial court erred in holding that the ODP violated R.C. 3517.21(B)(1) because the record does not establish by clear and convincing evidence that ODP violated R.C. 3517.21(B)(1).
 {¶ 33} The complaint named, as respondents, the candidates on the flyer and the Chairman of the ODP. After the commission dismissed the individual candidates who were named as respondents in the complaint, the only respondent remaining was the Chairman of the ODP. Thus, the violation finding of the commission applied to the Chairman of the ODP. As such, we must resolve whether there was clear and convincing evidence that the Chairman of the ODP knowingly, and with intent to affect the outcome of a political campaign used, in campaign material, titles of offices not currently held in a manner that implies incumbency. See R.C. 3517.21(B)(1); R.C. 3517.155(D)(1).
 {¶ 34} The Chairman of the ODP is expressly identified on the flyer as its sender. There is nothing in the record to suggest that the Chairman of the ODP did not sanction or authorize the distribution of the flyer. Furthermore, the Chairman of the ODP indisputably knew that none of the candidates on the flyer currently held the offices they were seeking. Thus, we find that there was clear and convincing evidence that the Chairman of the ODP knowingly, and with intent to affect the outcome of political campaigns, used titles of offices not currently held to imply that candidates on the distributed flyer currently held the office of which each was seeking.
 {¶ 35} Accordingly, appellant's first and fourth assignments of error are overruled.
 {¶ 36} By their fifth assignment of error, appellants argue that the trial court erred in holding that the commission can find that statements regarding a federal candidate can constitute a violation of R.C. 3517.21(B)(1). Only one of the candidates on the flyer, *Page 16 
Sherrod Brown, was seeking the federal office of U.S. Senator. The other candidates were seeking state offices. The commission found a violation of R.C. 3517.21(B)(1) based on the evidence in the record, which, as determined above, supported a violation finding even without considering whether the flyer communicated that Sherrod Brown was an incumbent U.S. Senator. Thus, it is unnecessary for this court at this time to resolve the issue raised by appellants' fifth assignment of error. See App. R. 12(A)(1)(c).
 {¶ 37} Based on the foregoing, we overrule appellants' first, second, third, and fourth assignments of error. Additionally, for the reason expressed above, appellants' fifth assignment of error is moot. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas affirming the Election Commission's determination that there was a violation of R.C. 3517.21(B)(1), which precludes an implication that a candidate holds an office that is not currently held.
Judgment affirmed.
BROWN, J., concurs.
BRYANT, J., dissents.
[1] Adjacent to this image is the word "Washington."
[2] Adjacent to this image is the word "Columbus."
[3] R.C. 3517.157(D) provides that a party adversely affected by a final determination of the commission may appeal pursuant to R.C. 119.12.
[4] Under First Amendment principles, such knowledge or recklessness must be demonstrated by clear and convincing evidence. See Committee toElect Straus Prosecutor v. Ohio Elections Comm., Franklin App. No. 07AP-12, 2007-Ohio-5447, at ¶ 9.
[5] R.C. 3517.21 was formerly codified as R.C. 3599.091.